EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Rolando Vázquez y/o Héctor L. Torres<br><br>Recurridos<br><br>v.<br><br>Consejo de Titulares y Junta de Directores del Condominio Los Corales, Raymond Torres Negrón, Agente Administrador<br><br>Recurridos<br><br>Departamento de Asuntos del Consumidor<br><br>Peticionario<br>_____<br><br>Rolando Vázquez y/o Héctor L. Torres<br><br>Peticionarios<br><br>v.<br><br>Consejo de Titulares y Junta de Directores del Condominio Los Corales, Raymond Torres Negrón, Agente Administrador<br><br>Recurridos | Certiorari<br><br>2025 TSPR 56<br><br>215 DPR ___ |

Número del Caso:  CC-2024-0331
                  cons. con CC-2024-0335

Fecha:  21 de mayo de 2025

Tribunal de Apelaciones:

     Panel VIII

CC-2024-0331

Representante legal de la parte peticionaria:

     Lcda. Mónica Figueroa Ramos

Representantes legales de los recurridos:

Lcdo. José David Hernández Dávila
Lcda. Liza Marie Rivera Figueroa
Lcdo. José R. Reyes Hernández

Representante legal del *Amicus Curiae:*

Lcda. Marimar Pérez Riera

CC-2024-0335

Representantes legales de la parte peticionaria:

Lcdo. José David Hernández Dávila
Lcda. Liza Marie Rivera Figueroa

Representante legal de la parte recurrida:

Lcdo. José R. Reyes Hernández

Representante legal del *Amicus Curiae*:

Lcda. Marimar Pérez Riera

Materia:  Propiedad Horizontal y Derecho Administrativo – Figura del Agente Administrador de un condominio; deferencia que los foros judiciales le deben otorgar a las conclusiones de derecho provistas por las agencias administrativas.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Rolando Vázquez y/o Héctor L. Torres<br><br>        Recurridos<br><br>            v.<br><br>Consejo de Titulares y Junta de Directores del Condominio Los Corales, Raymond Torres Negrón, Agente Administrador<br><br>        Recurridos<br><br>Departamento de Asuntos del Consumidor<br><br>        Peticionario<br>_____<br><br>Rolando Vázquez y/o Héctor L. Torres<br><br>        Peticionarios<br><br>            v.<br><br>Consejo de Titulares y Junta de Directores del Condominio Los Corales, Raymond Torres Negrón, Agente Administrador<br><br>        Recurridos | CC-2024-331<br><br>cons. con<br><br>CC-2024-335 | Certiorari |
|---|---|---|

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 21 de mayo de 2025.

En *Colón Ortiz v. Asoc. Cond. B.T. I*, 185 DPR 946 (2012), este Tribunal determinó que el Agente Administrador de un condominio es un mandatario del Consejo de Titulares y la Junta de Directores. En el caso que hoy nos ocupa, el Departamento de Asuntos del Consumidor (DACo) optó por

apartarse de nuestro razonamiento y concluyó que las disposiciones de la Ley de Condominios, *infra*, que aplican a la contratación de un Agente Administrador son las referentes a un contratista. No le asiste la razón.

En vista de este abuso de discreción por parte del DACo, nos vemos precisados a revisitar la deferencia que, según la Ley de Procedimiento Administrativo Uniforme, *infra*, los foros judiciales le deben otorgar a las conclusiones de derecho provistas por las agencias administrativas. Veamos.

**I**

El 15 de agosto de 2022, los señores Rolando Vázquez y Héctor L. Torres (Recurrentes) acudieron ante el DACo para presentar una querella en contra del Consejo de Titulares y la Junta de Directores del Condominio Los Corales (Recurridos). Allí, solicitaron la declaración de nulidad de la asamblea ordinaria en la que se seleccionó al señor Raymond Torres como Agente Administrador del Condominio Los Corales. Fundamentaron su petición en un alegado incumplimiento al Art. 58 de la Ley de Condominios, *infra*, por parte de la Junta de Directores. En específico, estos adujeron que, en vista de que el señor Raymond Torres figura a su vez como titular del Condominio Los Corales, era imprescindible que, previo a seleccionarlo como Agente Administrador, se evaluaran no menos de tres cotizaciones.

En una querella aparte,[1] el DACo anuló la asamblea en la que se seleccionó al señor Raymond Torres como Agente Administrador del Condominio Los Corales y ordenó a los Recurrentes a celebrar una nueva asamblea en la cual se debían tomar en consideración los mismos asuntos. El DACo aclaró que la asamblea no podía tratarse como una mera ratificación de los acuerdos originales, sino que la votación se debía llevar a cabo nuevamente.

Los Recurridos celebraron una nueva asamblea. Sin embargo, contrario a lo ordenado por el DACo, como último punto se atendió la ratificación del Agente Administrador. Así, pues, se confirmó la selección del señor Raymond Torres como Agente Administrador del Condominio Los Corales sin la presentación de propuestas o cotizaciones para la consideración de otros administradores.

Luego de una serie de trámites procesales ante el DACo, **la agencia emitió una *Resolución* en la que concluyó que los servicios del Agente Administrador equivalen a los de un contratista y no un mandatario; razón por la cual, se debía realizar un contrato de servicios profesionales**. De igual manera, determinó que los requisitos establecidos en el Art. 58 de la Ley de Condominios, *infra*, aplican a la selección del Agente Administrador, cuando concurren los requisitos establecidos en dicho artículo. Por último, la agencia determinó que en este caso, en vista de que se trata

---

[1] Angela Rene Rowell v. Junta de Directores del Condominio Los Corales.

de un titular del condominio, previo a seleccionarlo como Agente Administrador, se debían presentar propuestas adicionales.

Como consecuencia de lo anterior, el DACo ordenó la convocación y celebración de una asamblea extraordinaria del Consejo de Titulares para presentar, por lo menos, dos propuestas adicionales para seleccionar el Agente Administrador del Condominio Los Corales.

En desacuerdo, los Recurridos presentaron una *Moción de Reconsideración* en la cual solicitaron que se dejara sin efecto la *Resolución* del DACo y, en su lugar, se desestimara la *Querella*. **Fundamentaron su súplica en que, tal y como resolvió el Tribunal Supremo en *Colón Ortiz v. Asoc. Cond. B.T. I*, supra, el Agente Administrador de un condominio es un mandatario y no un contratista. En virtud de ello, no es de aplicación el Art. 58 de la Ley de Condominios, *infra*, y no procede la solicitud de propuestas adicionales.** Sin embargo, el DACo no acogió la moción, por lo que se consideró rechazada de plano.

Aun insatisfechos, los Recurridos acudieron ante el Tribunal de Apelaciones. Allí, señalaron que erró el DACo al ordenar una asamblea extraordinaria para considerar tres cotizaciones para la selección del Agente Administrador. Fundamentaron su recurso de revisión judicial en el acto de *fíat administrativo* por parte de la agencia al basar su

*Resolución* en el supuesto carácter de contratista del Agente Administrador (contrario a lo resuelto por este Tribunal).

Persuadidos por la claridad de la jurisprudencia, el Tribunal de Apelaciones revocó el dictamen del DACo. Fundamentó su *Sentencia* en el indubitado hecho de que **es norma resuelta en nuestro ordenamiento jurídico que el Agente Administrador en el régimen de propiedad horizontal es considerado un mandatario y no un contratista.**

En vista de lo anterior, el foro apelativo intermedio añadió que, contrario a lo razonado por la agencia, el Art. 58 de la Ley de Condominios, *infra*, no aplica en la contratación del Agente Administrador. Pues, dicho artículo opera únicamente en aquellos casos donde la Junta de Directores del condominio interesa contratar con algún proveedor de servicios.

Por último, el Tribunal de Apelaciones señaló que la Ley de Condominios, *infra*, regula la selección del Agente Administrador vía el Artículo 49 al disponer que **el administrador será elegido por el voto afirmativo de la mayoría de los miembros del Consejo de Titulares.**

Inconformes con la determinación del Tribunal de Apelaciones, tanto los señores Rolando Vázquez y Héctor L. Torres, como el DACo acudieron ante nos por virtud de recursos separados. Ambos plantearon que erró el foro apelativo intermedio al concluir que el Agente Administrador debe ser considerado mandatario y no contratista. En específico, los

Recurrentes adujeron que dicho foro no interpretó "de manera integral la Exposición de Motivos, el Artículo 49(a)(2) y el Artículo 58 de la Ley 129-2020".[2]

Por su parte, el DACo le imputó al Tribunal de Apelaciones la comisión de los siguientes errores: (1) revocar la Resolución del DACo en asuntos correspondientes a su jurisdicción primaria exclusiva de la Ley de Condominios sobre cómo interpretar la contratación del Agente Administrador cuando este es parte de la comunidad de titulares del condominio; (2) revocar la Resolución de DACo sustituyéndolo con su criterio y restando deferencia al expertise delegado y conocimiento especializado y pericia bajo la Ley de Condominios; y (3) no reconsiderar su *Sentencia* para tomar en cuenta el rol de formulación de política pública de la agencia bajo la Ley de Condominios, y su intención legislativa de establecer protecciones para evitar conflictos de interés cuando el Agente Administrador es simultáneamente un titular del condominio o parte de la comunidad de titulares.[3]

Expedimos el auto de *certiorari* en el CC-2024-0331 y lo consolidamos con el CC-2024-0335. Evaluados ambos expedientes, procedemos a resolver.

---

[2] Apéndice del *Certiorari* de los señores Rolando Vázquez y Héctor L. Torres, pág. 8.

[3] Apéndice del *Certiorari* del DACo, pág. 7.

**II**

Hoy debemos atender dos asuntos que van a la médula de la controversia. El primero es reiterar una norma que fue resuelta por este Tribunal hace apenas 13 años, pero que una agencia optó por obviar en su totalidad. Precisamente motivados por ese abuso de discreción, nuestra segunda encomienda será revisitar el trato que los tribunales han de concederle a las determinaciones de derecho de las agencias administrativas. Esto, en el marco jurídico provisto por la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9675, y de lo resuelto recientemente por el Tribunal Supremo de los Estados Unidos en *Loper Bright Enterprises v. Raimondo*, ___ U.S. ____, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024).

**A. *Ley de Condominios***

La Ley Núm. 129-2020, 31 LPRA sec. 1921 *et seq.*, mejor conocida como la Ley de Condominios de Puerto Rico (Ley de Condominios), según enmendada, se aprobó con el propósito principal de establecer un régimen jurídico que facilite la vida en convivencia y propicie la disponibilidad de viviendas en un área restringida de terreno.[4] En miras a la consecución de este propósito, la Ley de Condominios, *supra*, contempla la convergencia de los siguientes actores en el manejo del Régimen de Propiedad Horizontal. Estos son: 1) el Consejo de

---

[4] Exposición de motivos de la Ley Núm. 129-2020, 31 LPRA sec. 1921 *et seq.*, mejor conocida como la Ley de Condominios de Puerto Rico (Ley de Condominios), según enmendada.

Titulares; 2) la Junta de Directores; y 3) el Agente Administrador.

El Consejo de Titulares es "la autoridad suprema sobre la administración del inmueble sometido al Régimen de Propiedad Horizontal".[5] La Ley de Condominios, *supra*, lo define como el "órgano rector y deliberativo del condominio, con personalidad jurídica y constituido por todos los titulares".[6] Así, pues, este Consejo no es más que el conjunto de los titulares del condominio y su finalidad consiste en propender al mejor funcionamiento del sistema de propiedad horizontal, a la vez que proteger los intereses de todos sus miembros.[7]

Por otra parte, el Consejo de Titulares delega la administración del condominio a la Junta de Directores y la Ley de Condominios, *supra*, los define como un "Director o grupo de Directores electos por el Consejo de Titulares".[8] Por último, el Agente Administrador (figura principal en la controversia que nos ocupa) se define en la Ley de Condominios, *supra*, como la "Persona designada por el Consejo de Titulares para administrar la operación diaria del

---

[5] Exposición de motivos de la Ley de Condominios, *supra*.

[6] Art. 3, Ley de Condominios, 31 LPRA sec. 1921b.

[7] *Bravman, González v. Consejo Titulares*, 183 DPR 827 (2011).

[8] *Íd.*

condominio, bajo la supervisión del Director o la Junta de Directores".[9]

Ya con una mejor idea en relación con el propósito de la Ley de Condominios, *supra*, y los personajes principales que aseguran su cabal funcionamiento, veamos ahora las particularidades del proceso de selección del Agente Administrador.

La Exposición de Motivos de la Ley de Condominios, *supra*, presenta como un elemento innovador una serie de reglas básicas que cobijan la figura del Agente Administrador. Entre estas se encuentra el requisito de que el administrador adquiera diversas pólizas. Por ejemplo, de seguro de responsabilidad pública, sobre riesgos por deshonestidad o constitutivos de delito o fraude, de responsabilidad profesional a favor del Consejo de Titulares y una póliza vigente de la Corporación del Fondo del Seguro del Estado. Asimismo, debe presentar un Certificado Negativo de Antecedentes Penales.

Ahora bien, la inclusión que nos atañe son las protecciones que provee la Ley de Condominios, *supra*, para evitar posibles conflictos de interés cuando el Agente Administrador es simultáneamente un titular del condominio.[10] Así, pues, dejaremos a un lado la multiplicidad de exigencias que se imponen al Agente Administrador y nos enfocaremos en

---

[9] Art. 3, Ley de Condominios, 31 LPRA sec. 1921b.

[10] Exposición de motivos de la Ley de Condominios, *supra*.

la "protección para evitar posibles conflictos de interés cuando el Agente Administrador es simultáneamente un titular del condominio".[11]

El Artículo 49 de la Ley de Condominios, *supra*, dispone lo siguiente en relación con la contratación de un Agente Administrador que a su vez figura como titular del condominio: "En caso de un Agente Administrador que sea a su vez un titular del condominio que administraría, no podrá mantener deudas de cuotas de mantenimiento, derramas, y/o primas de pólizas matrices del condominio y durante su vigencia".[12]

Según el precitado artículo, vemos que **las protecciones que añade la Ley de Condominios, *supra*, para evitar "posibles conflictos de interés" son tres en total. Entiéndase que el Agente Administrador que simultáneamente es titular no puede contar con tres tipos de deudas: 1) cuotas de mantenimiento; 2) derramas; y 3) primas de pólizas matrices del condominio.**

Expuestos los elementos dirigidos a evitar los conflictos de interés en la selección del Agente Administrador, pasemos a repasar el proceso de contratación de este según lo dispuesto en la Ley de Condominios, *supra*.

---

[11] Véase la Exposición de Motivos de la Ley de Condominios, *supra*.

[12] Art. 49 de la Ley de Condominios, 31 LPRA sec. 1922u.

### i.   *Contratación del Agente Administrador en el Régimen de Propiedad Horizontal*

La Ley de Condominios, *supra*, dispone que será deber del Consejo de Titulares elegir por el voto afirmativo de la mayoría, las personas que habrán de ocupar los siguientes cargos: "1) Junta de Directores […] 2) Escoger al Agente Administrador, quien podrá ser una persona natural o jurídica, quien podrá o no pertenecer a la comunidad de titulares, y en quien el Consejo de Titulares, el Director o la Junta de Directores podrá delegar las facultades y deberes que les permita delegar el reglamento".[13]

No obstante lo anterior, los Recurrentes y el DACo sostienen que el artículo que aborda la contratación de un Agente Administrador que a su vez es titular, es el Artículo 58 de la Ley de Condominios, *supra*. Sin embargo, nos parece errada su apreciación.

El Artículo 58 de la Ley de Condominios, *supra*, se titula "Contratos con Suplidores de Materiales y Proveedores de Servicio por parte de la Junta de Directores". En vista de su importancia para la controversia, lo incluimos en términos literales. Reza lo siguiente:

> *La Junta de Directores no podrá aprobar contratos para obras, servicios, suministro de materiales y cualquier otro, que conlleven el desembolso de fondos comunes recaudados a través de cuotas de mantenimiento y derrama, que excedan el período del presupuesto operacional bajo su manejo y administración mientras se desempeñan como directores, salvo que contengan una resolución de*

---

[13] Art. 49 de la Ley de Condominios, *supra*, 31 LPRA sec. 1922u.

*revocación unilateral y sin expresión de causa, a favor de la Junta y/o el Consejo de Titulares, o que el Consejo de Titulares apruebe dicho contrato en una asamblea con el voto de la mayoría, exceptuando de esta disposición los elementos mecánicos esenciales al funcionamiento de los condominios, tales como elevadores, generadores de energía, bombas de agua, sistemas de supresión de fuegos y alarmas contra incendios. De igual forma, se darán por nulas o no puestas, las cláusulas de renovación automática incluidas en todo contrato suscrito donde el Consejo de Titulares sea parte, salvo que el Contrato con la cláusula de renovación automática sea aprobado por el Consejo de Titulares en asamblea.*

*La Junta de Directores tendrá que tomar las salvaguardas necesarias para asegurarse que las compañías o personas que contratan cumplan con todos los requisitos de ley aplicables como leyes laborales, tanto estatales como federales incluyendo, pero sin limitarse al cumplimiento del pago del salario mínimo, pago del Seguro Social Federal, cubiertas de seguros patronales y otros requisitos análogos.*

***Sólo se podrán contratar servicios profesionales ofrecidos por personas que sean titulares del condominio,*** *miembros de la Junta de Directores, o personas relacionadas hasta el segundo grado por consanguinidad con los miembros de la Junta, con titulares del condominio, o con el Agente Administrador,* ***si durante el periodo de evaluación previo a la contratación se solicitaron y evaluaron al menos tres (3) cotizaciones para el mismo servicio. Dos (2) de dichas cotizaciones deben ser solicitadas a compañías o individuos que cumplan con las condiciones previamente establecidas. Cuando se evidencie que por la naturaleza del servicio o por la inexistencia de otros potenciales licitadores no se consiguieron las tres (3) cotizaciones necesarias, el Secretario deberá hacer constar por escrito mediante acta de la Junta de Directores las gestiones realizadas a esos efectos, así como la expresión de que no se encontraron más licitadores para dicho servicio y la evidencia debe estar disponible para la revisión de cualquier titular que así lo solicite.*** *No se podrá contratar servicios profesionales de asesoría legal a ninguna persona que sea titular del condominio, miembros de la Junta de Directores, o personas relacionadas hasta el segundo grado por*

> *consanguinidad con los miembros de la Junta, o con titulares del condominio.*[14]

Con tan solo un vistazo, es evidente que, a diferencia del Artículo 49, el Artículo 58 es silente con relación a la figura del Agente Administrador. A diferencia del Artículo 49, el Artículo 58 de la Ley de Condominios, *supra*, se enfoca en los contratos con suplidores de materiales y proveedores de servicio por parte de la Junta de Directores. En resumidas cuentas, abarca la contratación de servicios profesionales.[15]

Ahora bien, la oración de la cual estriba la controversia y que, según los Recurrentes y el DACo, obliga a aplicar el Artículo 58 y la presentación de cotizaciones adicionales previo a la contratación del Agente Administrador que a su vez es titular es el siguiente:

> Sólo se podrán contratar servicios profesionales ofrecidos por personas que sean titulares del condominio, miembros de la Junta de Directores, o personas relacionadas hasta el segundo grado por consanguinidad con los miembros de la Junta, con titulares del condominio, o con el Agente Administrador, si durante el periodo de evaluación previo a la contratación se solicitaron y evaluaron al menos tres (3) cotizaciones para el mismo servicio.[16]

Luego de evaluar tanto el Artículo 49, como el 58, resta responder la siguiente interrogante, ¿Es el Agente Administrador de un inmueble bajo el régimen de propiedad horizontal un proveedor de servicios profesionales o un

---

[14] Negrilla suplida. Art. 58 de la Ley de Condominios, *supra*, 31 LPRA sec. 1923c.

[15] *Íd.*

[16] *Íd.*

mandatario del Consejo de Titulares? La respuesta corta es un mandatario y, en *Colón Ortiz v. Asoc. Cond. B.T. I*, 185 DPR 946 (2012), nos enfrentamos precisamente a esa interrogante. Veamos.

### ii. *Agente Administrador: ¿Contratista o Mandatario?*

Comencemos definiendo ambas figuras. El Artículo 1,381 del Código Civil de 2020, señala que a través de contrato de servicios "el prestador se obliga a proveer, sin estar subordinado al comitente, un servicio mediante el pago de un precio".[17] Por otra parte, en cuanto al contrato de mandato, el Código Civil dispone que: "por el contrato de mandato, el mandatario se obliga a realizar uno o más actos jurídicos en interés del mandante".[18]

Como adelantamos, en *Colón Ortiz v. Asoc. Cond. B.T. I,* supra, este Tribunal tuvo la oportunidad de analizar exhaustivamente los pormenores de ambas figuras. En aquella ocasión, comenzamos con la siguiente interrogante: ¿Es el Agente Administrador de un inmueble bajo el régimen de propiedad horizontal un mandatario del Consejo de Titulares?

Concluimos que, cuando se trate de un Agente Administrador de un inmueble bajo el régimen de propiedad horizontal, no hay espacio para hablar de un contratista,

---

[17] Art. 1,381 del Código Civil de 2020, 31 LPPRA sec. 10291.

[18] Art. 1,401 del Código Civil de 2020, 31 LPPRA sec. 10361.

sino que será considerado un mandatario sujeto a las disposiciones pertinentes del Código Civil.[19]

A modo de repaso, nuestra determinación para descartar que el Agente Administrador fuese considerado contratista se basó en los siguientes fundamentos: (1) que el Agente Administrador es elegido por el voto afirmativo de la mayoría del Consejo de Titulares;[20] (2) su obligación de rendir cuentas al terminar sus funciones;[21] (3) los elementos de encargo y de representación, ya que al Agente Administrador se le delegan facultades o responsabilidades que corresponden, en primera instancia, al Consejo de Titulares o a la Junta de Directores;[22] y (4) el hecho de que la ley dispone que el Consejo de Titulares podrá remover al Agente Administrador de su puesto de manera unilateral y sin necesidad de justificación,[23] mientras que la Junta de Directores podrá relevarlo de sus funciones por justa causa.[24]

Desde lo resuelto en *Colón Ortiz v. Asoc. Cond. B.T. I,* supra, nuestro ordenamiento jurídico cuenta con un nuevo

---

[19] *Colón Ortiz v. Asoc. Cond. B.T. I,* 185 DPR 946 (2012).

[20] Véase Art. 49 de la Ley de Condominios, *supra*.

[21] *Íd*. Al respecto, se dispone que "el Agente Administrador saliente deberá entregar mediante un acuse de recibo, todos los registros, documentos, llaves y propiedades pertenecientes al Consejo de Titulares al momento de ser requeridos por la Junta de Directores y se prohíbe la retención de estos".

[22] *Colón Ortiz v. Asoc. Cond. B.T. I*, *supra*, a la pág. 974.

[23] *Íd*.

[24] Véase Art. 53 de la Ley de Condominios, 31 LPRA sec. 1922y. Según este artículo, se entenderá por justa causa: (1) el desempeño negligente o culposo de sus funciones; (2) la deshonestidad o la violación de las normas de buena conducta establecidas en el reglamento del condominio; o (3) el incumplimiento de sus deberes establecidos contractualmente.

Código Civil y con una nueva Ley de Condominios. No obstante, nuestro razonamiento permanece inalterado. Ello, debido a que **las características del Agente Administrador imposibilitan considerarlo como un proveedor de servicios profesionales**. Así, pues, sigue vigente lo resuelto en *Colón Ortiz v. Asoc. Cond. B.T. I,* supra, y por tanto, el DACo no debió requerir la presentación de cotizaciones adicionales.

Ahora bien, expuesto lo relacionado los Artículos 49 y 58 de la Ley de Condominios, *supra*, es menester un breve repaso de los principios de hermenéutica que rigen nuestro ordenamiento jurídico.

### iii. *Normas de hermenéutica legal*

Los tribunales tenemos el propósito de solucionar las controversias y de adjudicar los derechos de las partes en un pleito. Como criterio rector, nos corresponde evaluar, en primera instancia, el texto de la ley. Este principio parte del hecho que, "**[c]uando la ley es clara y libre de toda ambigüedad, su texto no debe menospreciarse bajo el pretexto de cumplir su espíritu**".[25] Como corolario, cuando el legislador se ha manifestado con un lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa.[26]

---

[25] Negrilla suplida. Art. 19 del Código Civil de 2020, 31 LPRA sec. 5341.

[26] *Spyder Media Inc. v. Mun. de San Juan*, 194 DPR 547 (2016).

También es responsabilidad de los tribunales, en caso de ser necesario, armonizar, en la medida en que sea posible, "todas las disposiciones de la ley para lograr una interpretación integrada, lógica y razonable de la intención legislativa".[27] En vista de ello, **"las secciones, los párrafos, las frases y las oraciones que componen una ley no deben ser interpretadas de forma aislada, sino que deben analizarse en conjunto tomando en consideración todo su contexto de manera integral".**[28]

Entonces, luego de examinada la Ley de Condominios y la jurisprudencia, nos resta preguntar, ¿fue propósito del legislador o fue del DACo determinar que el Agente Administrador de un condominio es un contratista y no un mandatario? Responderemos más adelante.

Ahora bien, expuesta la normativa referente a la Ley de Condominios, *supra*, procede adentrarnos en las facultades de las agencias administrativas y su relación con los tribunales.

## B.   *Las Agencias Administrativas y la Revisión Judicial*

Este Tribunal ha reconocido ciertas pautas sobre el poder que ostentan las agencias administrativas.[29] De entrada, es la ley "el medio o fuente legal que establece los límites

---

[27] *Spyder Media Inc. v. Mun. de San Juan*, *supra*, pág. 555. (citando a *AMPR v. Srio. Educación*, *ELA*, 178 DPR 253, 266 (2010)).

[28] Negrilla suplida. *Bco. Santander v. Correa García*, 196 DPR 452, 466 (2016).

[29] *Buxó Santiago v. Estado Libre Asociado de Puerto Rico*, 2024 TSPR 130.

del poder y de las facultades de las agencias administrativas".[30] Así, es esta, bajo una serie de principios inteligibles, la que le confiere autoridad a las agencias y les delega **únicamente** los poderes necesarios para implementar las leyes que administran.[31] Como corolario, **un organismo administrativo no puede asumir jurisdicción sobre un asunto a menos que esté claramente autorizado en ley para ello.**[32]

En vista de lo anterior, nos vemos obligados a atender varios asuntos: (1) las facultades que la Ley de Condominios, *supra*, le otorga al DACo; (2) la normativa vigente de deferencia judicial según la LPAU; y (3) lo resuelto por el Tribunal Supremo federal en *Loper Bright Enterprises v. Raimondo*, *supra*.

### i.  *Jurisdicción conferida al DACo por la Ley de Condominios*

La jurisdicción es el poder o la autoridad que tiene un tribunal para considerar y decidir los casos y las controversias ante su consideración.[33] En el caso de marras, el DACo sostiene que la Ley de Condominios, *supra*, le confirió "jurisdicción primaria exclusiva" sobre varios asuntos. Como corolario, debemos definir este tipo de jurisdicción.

---

[30] *Yiyi Motors, Inc. v. ELA*, 177 DPR 230(2009).

[31] *Sánchez v. Departamento de Vivienda*, 184 DPR 95 (2011).

[32] *Buxó Santiago v. Estado Libre Asociado de Puerto Rico, supra*, en la pág. 5. (citando a OCS v. CODEPOLA, 202 DPR 842, 852 (2019)).

[33] *Beltrán Cintrón v. Estado Libre Asociado de PR*, 204 DPR 89 (2020).

De ordinario, los tribunales en Puerto Rico poseen jurisdicción general y ostentan "autoridad para atender cualquier causa de acción que presente una controversia propia para adjudicación, a menos que no tengan jurisdicción sobre la materia".[34] Por su parte, la jurisdicción sobre la materia es la capacidad que tienen los tribunales para atender y resolver una controversia sobre un aspecto legal.[35] Esta capacidad solo puede ser limitada por el Estado, quien puede otorgar o privar a un tribunal de jurisdicción sobre la materia mediante legislación a esos efectos.[36]

La **doctrina de jurisdicción primaria** forma parte de las normas de autolimitación judicial reconocidas en nuestro ordenamiento jurídico.[37] El propósito de esta doctrina consiste en determinar si la facultad inicial de adjudicar y entender en el asunto le corresponde al foro administrativo o al judicial.[38]

Cabe destacar que la jurisdicción primaria consiste en dos vertientes: la jurisdicción primaria concurrente y la **jurisdicción primaria exclusiva**. La jurisdicción primaria concurrente tiene lugar cuando la ley permite que la reclamación se inicie ya sea en la agencia o en el tribunal.

---

[34] *Rodríguez Rivera v. De León Otaño*, 191 DPR 700 (2014).

[35] J.A. Echevarría Vargas, *Procedimiento civil puertorriqueño*, [s.l.], [Ed. del autor], 2010, pág. 25.

[36] *Rodríguez Rivera v. De León Otaño*, supra, págs. 708-709.

[37] *Colón Rivera et al. v. ELA*, 189 DPR 1033 (2013).

[38] D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Bogotá, Ed. Forum, 2013, pág. 562.

A diferencia de esta, la jurisdicción primaria exclusiva **está presente cuando la propia ley establece que el foro administrativo tendrá jurisdicción inicial exclusiva para entender en la reclamación.**[39]

En síntesis, la jurisdicción primaria exclusiva (que es la cual nos atañe) se trata de un mandato legislativo a través del cual se establece que el ente administrativo tendrá jurisdicción sobre determinado tipo de asunto. Como consecuencia de ello, de enfrentarse a esta situación, los tribunales no contarían con autoridad para atender las reclamaciones en primera instancia.[40]

Expuesto lo anterior, debemos responder la siguiente interrogante: **¿Sobre qué asuntos en particular le confirió jurisdicción la Ley de Condominios, *supra*, al DACo?** Para responder, debemos recurrir al texto íntegro de la Ley.

El Artículo 65 de la Ley de Condominios, *supra*, intitulado "Impugnaciones de Acciones u Omisiones de la Junta de Directores, Administrador Interino y Acuerdos y Determinaciones del Consejo", en lo pertinente, reza:[41]

> Las acciones u omisiones de la Junta de Directores, del Administrador Interino, del Agente Administrador así como los acuerdos del Consejo de Titulares podrán ser impugnados por los titulares en los siguientes supuestos:

---

[39] *Rodríguez Rivera v. De León Otaño*, supra, pág. 709.

[40] *Báez Rodríguez et al. v. ELA*, 179 DPR 231 (2010).

[41] Art. 65 de la Ley de Condominios, 31 LPRA sec. 1923j.

a) cuando sean contrarios a esta Ley, la escritura matriz y reglamento del condominio;

b) cuando resulten gravemente perjudiciales a los intereses de la comunidad o a un titular;

c) cuando resulten gravemente perjudiciales para algún titular que no tenga obligación jurídica para soportarlo y no haya sido previsible al momento de la compra.

Los titulares que sean dueños de apartamentos en condominios que sean dedicados exclusivamente a uso comercial, tendrán que presentar la impugnación ante el Tribunal de Primera Instancia, el cual tendrá jurisdicción primaria y exclusiva. **En el caso de los titulares sean dueños de apartamentos en condominios con al menos un apartamento de uso residencial, la jurisdicción será primaria y exclusiva del Departamento de Asuntos del Consumidor, así como cualquier reclamación presentada en contra del agente administrador.**[42]

Por otro lado, el Artículo 66 de la Ley de Condominios, *supra*, concerniente a la presentación de acciones de impugnación, añade que:[43]

El Departamento de Asuntos del Consumidor tendrá una División Especial de Adjudicación de Querellas de Condominios, para atender todo lo relacionado a todo condominio en el que exista por lo menos un apartamento dedicado a vivienda. El Secretario tendrá la capacidad de nombrar el personal necesario para la pronta atención de las querellas presentadas por los titulares de apartamentos al amparo de esta Ley contra el Consejo de Titulares o el Agente Administrador, o por la Junta de Directores al amparo de aquellas leyes especiales aplicables. Se faculta además al Secretario para adoptar y/o modificar los reglamentos necesarios para la adjudicación de las querellas presentadas en el Departamento y para el fiel cumplimiento de esta Ley. Sin perjuicio de lo anterior, o de las acciones judiciales que puedan presentarse, toda querella relacionada con la cubierta o los términos y condiciones del contrato de seguros, será referida, a la Oficina del Comisionado de Seguros de Puerto Rico para su consideración. Se

---

[42] Negrilla suplida.

[43] Art. 66 de la Ley de Condominios, 31 LPRA sec. 1923k.

faculta al Comisionado, de ser necesario, a adoptar y/o modificar los reglamentos necesarios para la adjudicación de las querellas que surjan bajo el Régimen de Propiedad Horizontal.

De una lectura íntegra de ambos artículos **concluimos que la Ley de Condominios,** *supra*, **le confirió jurisdicción primaria exclusiva al DACo únicamente para atender las querellas presentadas por los titulares de condominios residenciales en contra de la Junta de Directores, el Agente Administrador o el Consejo de Titulares, según lo dispuesto por la Ley.**

Si bien es cierto que el DACo contaba con la jurisdicción primaria exclusiva para atender la querella que originó la controversia, esto no altera la facultad de los tribunales para revisar los errores de derecho en los que incurra una agencia en el ejercicio de esa jurisdicción primaria exclusiva.

Atendido el planteamiento referente a la jurisdicción primaria exclusiva, nos corresponde adentrarnos en la deferencia que, según la LPAU, los foros judiciales le deben otorgar a las determinaciones administrativas.

## ii. *Deferencia judicial a las determinaciones administrativas*

Los jueces reciben un mandato legislativo de revisar las actuaciones administrativas, el cual deben cumplir cabalmente. Y como hemos expresado, distinto a las agencias, los tribunales tienen una mayor oportunidad de: "[S]ituar

estas controversias en un ámbito más amplio, donde la consideración decisiva tiene que ser el continuado mantenimiento de un vigoroso régimen de derecho en la comunidad, abonado por la indispensable fe pública en los procesos administrativos y judiciales".[44]

Al tomar en consideración este mandato, resulta imprescindible repasar los cambios que la Asamblea Legislativa ha introducido (y removido) a la Ley que gobierna a las agencias administrativas.

En la Ley 210-2016 (la Ley de Reforma del Derecho Administrativo), la sección referente al alcance de la revisión judicial disponía lo siguiente:

> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obre en el expediente administrativo.
>
> **Las conclusiones de derecho merecerán deferencia judicial, sin menoscabo de la función de revisión judicial.**
>
> **Confrontado con una solicitud de revisión judicial el tribunal tomará en consideración los siguientes principios:**
>
> > **(a) Presunción de corrección;**
> > **(b) Especialización del foro administrativo;**
> > **(c) No sustitución de criterios;**
> > **(d) Deferencia al foro administrativo; y,**
> > **(e) La decisión administrativa sólo se dejará sin efecto ante una actuación arbitraria, ilegal o irrazonable, o ante determinaciones huérfanas de prueba sustancial en la totalidad del expediente.**[45]

---

[44] *South Porto Rico Sugar Co. V. Junta Azucarera*, 82 DPR 847 (1961).

[45] Negrilla suplida. Sección 4.6 de la Ley Núm. 210-2016.

Según la precitada sección, el legislador procuró que los foros judiciales le otorgaran un amplio grado de deferencia a las determinaciones de las agencias administrativas. Sin embargo, tan solo un año después y por conducto de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9675, la Asamblea Legislativa derogó la Ley 210-2016.

Actualmente, la sección concerniente al alcance de la revisión judicial dispone únicamente lo siguiente:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
>
> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
>
> **Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.**[46]

Como podrán observar, en esta ocasión el legislador se limitó a expresar que "las conclusiones de derecho serán revisables en todos sus aspectos".

Entonces, ¿Fue la intención del legislador eliminar la deferencia a las conclusiones de derecho? Concluimos que sí. Claramente, la Asamblea Legislativa tuvo la oportunidad de mantener inalterada la sección anterior en lo relacionado a la revisión judicial. No obstante, optó por permitirle a los

---

[46] Negrilla suplida. Sección 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675.

tribunales la facultad de ejercer la adjudicación de controversias, para lo que fueron creados.

Empero, esta Curia tuvo la oportunidad de discutir el estándar y alcance de la revisión judicial de las decisiones administrativas al amparo de la sección 4.5 de la LPAU actual en el caso *Super Asphalt v. AFI*, 206 DPR 803 (2021). Allí, reiteramos que los tribunales apelativos deben otorgar amplia deferencia a las decisiones de las agencias administrativas. Esto, en virtud de la experiencia y pericia que se presume que tienen esos organismos para atender y resolver los asuntos que le han sido delegados.[47]

Sin embargo, posterior a nuestra decisión en *Super Asphalt v. AFI*, supra, el Tribunal Supremo de Estados Unidos emitió su decisión en *Loper Bright Enterprises v. Raimondo,* supra. Considerando que la LPAU se crea inspirada por el *Administrative Procedure Act* (APA)*,* 5 U.S.C. 551 et seq., resulta altamente persuasivo el razonamiento del foro federal en este caso, por lo que abundaremos sobre ello.

### iii. *Loper Bright Enterprises v. Raimondo,* supra.

En *Loper Bright Enterprises v. Raimondo,* supra, el Tribunal Supremo de Estados Unidos resolvió que la deferencia *Chevron* era contraria al mandato congresional de la APA que deposita en los tribunales la responsabilidad de interpretar

---

[47] *Super Asphalt v. AFI*, 206 DPR 803, 820 (2021).

la ley.[48] Repasemos algunos de los fundamentos que guiaron el razonamiento del foro federal.

Según el foro federal, la deferencia Chevron iba en contra de los principios que cimentaron el Poder Judicial. Pues, los Constituyentes estadounidenses vislumbraron que la interpretación final de las leyes sería "the proper and peculiar province of the courts".[49] Asimismo, en *Marbury v. Madison*, 1 Cranch 137, 177 (1803), el célebre Juez Presidente Marshall declaró que "determinar cuál es el derecho es, categóricamente, el ámbito y el deber del poder judicial".[50]

Esta deferencia impuesta por Chevron no solo iba en contra de los principios más básicos y fundamentales de derecho, sino que, como bien señaló el foro federal, la APA (al igual que la LPAU) expresamente le confirió a los tribunales la facultad de decidir "*all relevant questions of law*" que surjan al revisar la gestión de una agencia.[51] Sobre

---

[48] La **deferencia Chevron** se refiere a una regla interpretativa para aquellos casos en los que estuviera en controversia una interpretación adoptada por una agencia administrativa. Consistía en dos pasos: (1) los foros judiciales tenían la obligación de examinar si el Congreso había provisto una respuesta a la controversia. Para ello, examinarían el historial legislativo y harían una lectura integrada del texto de la ley; y (2) De no ser posible atribuirle al Congreso una respuesta a la controversia, se trataría de un asunto ambiguo y el tribunal debía apreciar si la interpretación de la agencia era permisible. De serlo, la deferencia Chevron imponía a los foros judiciales la obligación de brindar deferencia y sostener la interpretación de la agencia. Esto último, incluso cuando el tribunal pudiera pensar que existía una mejor interpretación. Véase *Chevron USA v. Natural Res. Def. Council*, 467 US 837 (1984).

[49] The Federalist No. 78 p. 525 (J. Cooke ed. 1961).

[50] In the foundational decision of Marbury v. Madison, Chief Justice Marhsall famously declared that "[i]t is emphatically the province and duty of the judicial department to say what the law is." 1 Cranch 137, 177 (1803).

[51] Sección. 706 del *Administrative Procedure Act* (APA), 5 USC 551 et seq.

el particular, expresaron que **la APA no establece ninguna regla de deferencia que los tribunales deban aplicar a la hora de atender esas cuestiones de derecho**. Esa omisión dice mucho, puesto que la Sección 706, sí ordena que la revisión judicial sea deferente hacia el establecimiento de política pública y las adjudicaciones de las agencias.[52]

Contrario a lo aducido por la deferencia en *Chevron*, la APA incorpora lo que tradicionalmente se ha entendido como la función judicial, en virtud de lo cual los tribunales deben ejercer un juicio independiente al determinar el significado de las disposiciones estatutarias.

Ahora bien, debemos enfatizar que al ejercitar dicho criterio, los tribunales pueden apoyarse, como lo han hecho desde el inicio, en las interpretaciones de las agencias. Son las agencias las que tienen la responsabilidad de aplicar ciertas leyes. Sin embargo, tales interpretaciones "constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía" de conformidad con la APA; y no avalar ciegamente, como se solía hacer en el pasado.[53]

Según señaló el foro federal, relegar a las agencias la función de interpretar las leyes, desafía el mandato de la

---

[52] And it [haciendo referencia a la APA] prescribes no deferential standard for courts to employ in answering those legal questions. That omission is telling, because Section 706 does mandate that judicial review of agency policymaking and factfinding be deferential.

[53] *Loper Bright Enterprises v. Raimondo,* supra (citando a Skidmore v. Swift & Co., 323 U.S. 134).

APA de que sea el tribunal revisor quien "decida todas las cuestiones de derecho pertinentes".[54]

En respuesta al argumento del *expertise* de las agencias (el que también hoy presenta el DACo), el foro federal acentuó que los tribunales no deciden estas cuestiones a ciegas. Las partes y los *amicus curiae* están empapados en el tema y los tribunales revisores tienen el beneficio de sus perspectivas. En un caso administrativo en particular, el tribunal realizará su tarea con un "*body of experience and informed judgment*" de la agencia, entre otra información, a su disposición.[55]

En conclusión, tal y como resolvió el máximo foro federal, los tribunales deben ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. Pero principalmente, contrario a la práctica de las pasadas décadas, **los tribunales no tienen que darle deferencia a la interpretación de derecho que haga una agencia simplemente porque la ley es ambigua.**[56]

## III

De primera instancia la controversia que hoy nos ocupa aparenta ser sobre el carácter del Agente Administrador de un condominio. Entiéndase, si este es un mandatario o un

---

[54] Traducción nuestra. 5 USC sec. 706.

[55] *Loper Bright Enterprises v. Raimondo,* supra, (citando a Skidmore, supra, pág. 140).

[56] *Loper Bright Enterprises v. Raimondo,* supra, a la pág. 35.

contratista. Sin embargo, según adelantamos, en *Colón Ortiz v. Asoc. Cond. B.T. I.*, supra, este Tribunal resolvió que el Agente Administrador es un mandatario del Consejo de Titulares y la Junta de Directores. De esta forma, está meridianamente claro el carácter del administrador.

No obstante lo anterior, en el caso de autos, en un patente abuso de discreción, el DACo se tomó la libertad de obviar la jurisprudencia de este Tribunal y, escudados por un supuesto "expertise", optó por determinar que el Agente Administrador debe ser considerado como contratista.

En oposición a esta actuación del DACo, los recurridos sostienen por su parte que "el DACo pretende imponer su criterio y para ello, como carece de facultad legislativa, invita a este Honorable Tribunal a claudicar a su poder delegado por la Constitución de Puerto Rico".[57] Les asiste la razón.

En aras de resaltar el problema que representa esta concepción errada de deferencia para nuestro ordenamiento jurídico, resumiré los errores que le imputa el DACo al Tribunal de Apelaciones: (1) obviar la alegada jurisdicción primaria exclusiva que ostenta la agencia para interpretar la contratación del Agente Administrador cuando este es parte de la comunidad de titulares del condominio; (2) la deferencia que le debe el foro judicial al "expertise" del DACo bajo la Ley de Condominios; y (3) la intención legislativa de

---

[57] Alegato en oposición del DACo. Pág. 13.

establecer protecciones para evitar conflictos de interés cuando el Agente Administrador es simultáneamente un titular del condominio.

Primero, en la sección referente a la normativa aplicable se expusieron los artículos de la Ley de Condominios, *supra*, que abundan sobre la "jurisdicción primaria exclusiva" del DACo. Así, concluimos que, esa jurisdicción primaria exclusiva (que no está aquí en controversia) se limita al trámite de adjudicación de querellas. No obstante, hacemos hincapié en que la agencia no puede utilizar esa prerrogativa como una carta blanca para actuar contrario a derecho. Y muchos menos para aducir que está exenta de la facultad revisora de los tribunales.

En cuanto al segundo señalamiento de error, el DACo trae a colación la deferencia que le debe el foro judicial a su alegado peritaje. Sin embargo, de una lectura sosegada de la Ley de Condominios, *supra*, es evidente que los artículos que hacen referencia a los servicios de un contratista excluyen a la figura del Agente Administrador.

Por último, el DACo señaló la intención legislativa de establecer protecciones para evitar conflictos de interés cuando el Agente Administrador es simultáneamente un titular del condominio. La agencia utilizó las palabras de la Exposición de Motivos de la Ley de Condominios, *supra*, para justificar la solicitud de cotizaciones adicionales en la contratación del administrador. Sin embargo, según expusimos

en el acápite II, las protecciones que añade la Ley de Condominios, *supra*, para evitar "posibles conflictos de interés" son que, el Agente Administrador que a su vez es titular, no puede contar con tres tipos de deudas: 1) cuotas de mantenimiento; 2) derramas; y 3) primas de pólizas matrices del condominio. En fin, erró el DACo al concluir que la intención legislativa fue solicitar cotizaciones adicionales. Pues, como mencionamos, esa protección es dirigida exclusivamente para la contratación de servicios profesionales.

**Atendidos los planteamientos del DACo, nos resta abundar sobre la deferencia que, según la LPAU, *supra*, los foros judiciales le deben a las agencias administrativas.**

En la Parte II expusimos que la sección 4.5 de la LPAU, *supra,* dispone que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. Sin embargo, en cuanto a las **conclusiones de derecho**, la misma Ley se limita a rezar que: "**serán revisables en todos sus aspectos por el tribunal**".

Ahora bien, este Tribunal ha expresado en reiteradas ocasiones que las conclusiones e interpretaciones de las agencias merecen gran consideración y respeto y que su revisión judicial se limita a determinar si estas actuaron arbitraria o ilegalmente.[58] No obstante, esta consideración

---

[58] Véase *Fuertes y otros v. ARPe*, 134 DPR 947 (1993).

por parte de los tribunales **no equivale a una renuncia de nuestra función revisora**. Así, pues, no podemos avalar la postura del DACo al pretender que los jueces "abdiquen su función judicial y se conviertan en autómatas obligados a respetar ciegamente sus determinaciones".[59]

Esta disyuntiva respecto a la función revisora de los tribunales no es propia únicamente de nuestro ordenamiento jurídico. Como discutimos anteriormente, el Tribunal Supremo federal se enfrentó a la misma situación en *Loper Bright Enterprises v. Raimondo,* supra. Allí, fundamentándose en los principios rectores del quehacer judicial, pautó el fin de la deferencia absoluta a las apreciaciones de derecho arribadas por las agencias administrativas.

Hoy hacemos eco a las palabras del foro federal y concluimos que la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales. Así, enfatizamos la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, *supra*. Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, **será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos**. No guiados por la deferencia automática a la que alude el DACo, sino que por los mecanismos interpretativos propios del Poder Judicial.

---

[59] *Hilton Hotels International, Inc. v. Junta de Salario Mínimo*, 74 DPR 670 (1953).

**IV**

Por los fundamentos expuestos, se confirma la *Sentencia* emitida por el Tribunal de Apelaciones. Así, reiteramos que el Agente Administrador de un condominio es un mandatario del Consejo de Titulares y de la Junta de Directores.

Se dictará Sentencia de conformidad.


                              Erick V. Kolthoff Caraballo
                                    Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Rolando Vázquez y/o Héctor L. Torres<br><br>Recurridos<br><br>v.<br><br>Consejo de Titulares y Junta de Directores del Condominio Los Corales, Raymond Torres Negrón, Agente Administrador<br><br>Recurridos<br><br>Departamento de Asuntos del Consumidor<br><br>Peticionario<br>_____<br><br>Rolando Vázquez y/o Héctor L. Torres<br><br>Peticionarios<br><br>v.<br><br>Consejo de Titulares y Junta de Directores del Condominio Los Corales, Raymond Torres Negrón, Agente Administrador<br><br>Recurridos | CC-2024-331<br><br>cons. con<br><br>CC-2024-335 | Certiorari |

SENTENCIA

En San Juan, Puerto Rico, a 21 de mayo de 2025.

Por los fundamentos antes expuestos en la Opinión que antecede la cual se hace formar parte íntegra de la presente, se confirma la *Sentencia* emitida por el Tribunal de Apelaciones. Así, reiteramos que el Agente Administrador de un condominio es un mandatario del Consejo de Titulares y de la Junta de Directores.

Así lo pronunció, manda el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emitió las expresiones siguientes:

Estoy de acuerdo con el resultado al que llega una mayoría respecto a que la figura del Agente Administrador de un condominio es un mandatario y las salvaguardas que provee el ordenamiento para su selección. Por otro lado, entiendo que era innecesario recurrir a Loper Bright Enterprises v. Raimondo, 603 U.S. 369 (2024) para reiterar una norma que ya está establecida en nuestro ordenamiento. Como bien resalta la Opinión mayoritaria, la Sección 4.5 de la Ley 38-2017, según enmendada, conocida como la *Ley de Procedimiento Administrativo Uniforme*, 31 LPRA 9675, establece que las conclusiones de derecho de las agencias administrativas serán revisables en todos sus aspectos por el tribunal. Asimismo, en múltiples ocasiones hemos expresado que la deferencia administrativa no se extiende automáticamente a las conclusiones de derecho. Otero Rivera v. Bella Retail Group, Inc., 2024 TSPR 70, 214 DPR ____ (2024); ECP Incorporated v. OCS, 205 DPR 268, 281-282 (2020). Ante esta realidad jurídica, no tenemos más que recurrir a nuestros pronunciamientos previos en cuanto a este particular para disponer de la controversia. Así, considero innecesario acudir a la jurisprudencia federal en esta materia cuando nuestro ordenamiento provee herramientas para la resolución de la controversia ante nuestra consideración. Este curso de acción minusvalora nuestra casuística y, así, pareciera relegarla a un segundo plano ante una jurisprudencia federal que, en este caso, es de carácter meramente persuasivo.

El Juez Asociado señor Estrella Martínez emitió una Opinión de Conformidad a la cual se unió la Jueza Presidenta Oronoz Rodríguez. La Jueza Asociada señora Pabón Charneco concurrió con el resultado sin opinión escrita. El Juez Asociado señor Colón Pérez emitió una Opinión Disidente.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| Rolando Vázquez y/o Héctor L. Torres<br><br>Recurridos<br><br>v.<br><br>Consejo de Titulares y Junta de Directores del Condominio Los Corales, Raymond Torres Negrón, Agente Administrador<br><br>Recurridos<br><br>Departamento de Asuntos del Consumidor<br><br>Peticionario | CC-2024-0331<br><br>cons. con<br><br>CC-2024-0335 | Certiorari |
| Rolando Vázquez y/o Héctor L. Torres<br><br>Peticionarios<br><br>v.<br><br>Consejo de Titulares y Junta de Directores del Condominio Los Corales, Raymond Torres Negrón, Agente Administrador<br><br>Recurridos | | |

Opinión de Conformidad emitida por el Juez Asociado Señor ESTRELLA MARTÍNEZ, a la cual se une la Jueza Presidenta ORONOZ RODRÍGUEZ.

En San Juan, Puerto Rico, a 21 de mayo de 2025.

Estoy conforme con reafirmar la norma que se pautó en *Colón Ortiz v. Asoc. Cond. B.T. I*, 185 DPR 946 (2012), respecto a la figura del Agente Administrador de un condominio. De igual forma, consecuentemente, he respaldado que se establezcan límites a la deferencia que los tribunales conceden a las determinaciones administrativas, con el fin de no restringir indebidamente la revisión judicial responsable, en particular cuando la deferencia excesiva puede conllevar a validar interpretaciones administrativas arbitrarias, irrazonables o contrarias a derecho. Hoy cumplimos tal cometido, lo cual es necesario porque persiste una práctica, en ciertos sectores, a no tomar en cuenta las excepciones importantes que hemos pautado a la norma de deferencia, pues esta nunca ha sido absoluta.

En ese sentido, estimo que la *Opinión* Mayoritaria contribuirá a desterrar la idea, presente en algunos sectores de la comunidad jurídica, de que la deferencia judicial equivale a una especie de inmunidad para toda actuación administrativa. Por la importancia de esta controversia, considero meritorio expresarme y abundar sobre esos extremos.

I.

La *Opinión* Mayoritaria expone la norma general que reiteramos en *Super Asphalt v. AFI y otro*, 206 DPR 803 (2021), sobre la deferencia judicial hacia las determinaciones administrativas. No podemos obviar las excepciones importantes que también se han impuesto a dicha

deferencia. En consecuencia, resulta imperativo recordar que continuamente hemos expresado que esa norma no es absoluta, "por lo cual este Tribunal ha sido enfático en que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones o interpretaciones administrativas irrazonables, ilegales o contrarias a derecho." Graciani Rodríguez v. Garaje Isla Verde, 202 DPR 117, 127 (2019); Rolón Martínez v. Supte. Policía, 201 DPR 26, 35-37 (2018); Mun. de San Juan v. CRIM, 178 DPR 163, 175-176 (2010); Perfect Cleaning v. Cardiovascular, 172 DPR 13, 147-149 (2007); Misión Ind. P.R. v. J.P., 146 DPR 64, 130 (1998). De hecho, estos límites a la deferencia judicial fueron reafirmados tan recientemente como en Super Asphalt v. AFI y otro, supra.

Nótese que esos contornos los aplicamos tanto bajo el esquema de la Sección 4.6 de la Ley Núm. 170 de 12 de agosto de 1988, conocida como la Ley de Procedimiento Administrativo del Estado Libre Asociado de Puerto Rico, 3 LPRA secc. 2175 (derogada) (Ley Núm. 170-1988), así como bajo el texto claro e inequívoco de la Sección 4.5 de la Ley Núm. 38-2017, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, 3 LPRA secc. 9675 (LPAU), el cual establece que las conclusiones de derecho serán revisables en todos sus aspectos por los tribunales. Ante el claro mandato legislativo y el firme marco jurisprudencial elaborado por este Tribunal, que limita la deferencia judicial en los casos de

interpretaciones administrativas irrazonables, ilegales o contrarias a derecho, es innecesario recurrir a jurisprudencia federal para sustentar tal principio o incluso impartir una relevancia desproporcional al caso de Loper Bright Enterprises v. Raimondo, 144 S.Ct. 2244, 219 L.Ed.2d 832 (2024).[1] Entiéndase, en Puerto Rico nunca ha estado cuestionada *de jure* la facultad y el deber de los tribunales de revisar a cabalidad las determinaciones administrativas.

Ahora bien, reconozco que el caso de Loper Bright Enterprises v. Raimondo, supra, aunque a mi juicio no constituye un fundamento vinculante para el dictamen al que arribamos hoy, sirve como una herramienta analógica que abona a la necesidad de velar que, en la práctica, los tribunales no incurramos en una deferencia excesiva y desproporcional en áreas en las que las agencias no poseen un conocimiento especializado. En efecto, el caso ante nos es un ejemplo del tipo de controversia en el que no puede adoptarse una postura de deferencia autómata y a ciegas hacia una determinación adoptada por una agencia administrativa. Lo anterior, debido a que la agencia se apartó de la

---

[1]Para un análisis de las posibles repercusiones de esa jurisprudencia, véase William Vazquez Irizarry, *¿Qué decidió el Supremo federal sobre la doctrina de Chevron y qué significa para Puerto Rico?*, https://aldia.microjuris.com/2024/07/01/que-decidio-el-supremo-federal-sobre-la-doctrina-de-chevron-y-que-significa-para-puerto-rico/#:~:text=Doctrina%20Chevron%3A%20Anticipan%20importante%20decisión,que%20la%20interpretación%20sea%20razonable (última vista, 19 de mayo de 2025).

jurisprudencia interpretativa y concluyó erróneamente que las disposiciones de la Ley de Condominios de Puerto Rico, 31 LPRA sec. 1921 *et seq.*, aplicables a la contratación de un Agente Administrador de un condominio, correspondían a las de un contratista. Como vemos, dicha conclusión es contraria a lo establecido en <u>Colón Ortiz v. Asoc. Cond. B.T. I</u>, supra, donde este Tribunal determinó que el Agente Administrador de un condominio es un mandatario del Consejo de Titulares y la Junta de Directores, y no un contratista.

Así pues, considero que, en esta controversia, para reiterar lo ya pautado sobre las determinaciones de las agencias administrativas, debemos acudir a nuestra propia realidad del Derecho Administrativo puertorriqueño para sustentar y precisar los contornos de una deferencia judicial responsable. Veamos.

## II.

En el pasado, he advertido que

> [e]n Puerto Rico, la deferencia judicial está sustentada mayormente en la doctrina de separación de poderes. Es decir, en el entendido de que la Rama Judicial no debe inmiscuirse en asuntos de política pública que le fueron delegados exclusivamente a las otras dos Ramas de Gobierno. A pesar de esto, los tribunales todavía resguardan la potestad de revisar la razonabilidad de las determinaciones de las agencias. Es decir, **se parte de la premisa de un tribunal proactivo, no pasivo, ante las determinaciones de las agencias.** (Negrillas suplidas). L. Estrella Martínez, <u>Acceso a la justicia: Derecho humano fundamental</u>, 1ra ed., San Juan, Eds. SITUM, 2017, pág. 223.

Resulta adecuado recordar que la tendencia legislativa ha sido reconocer la facultad del Poder Judicial para revisar las conclusiones de derecho de las determinaciones administrativas **en todos sus aspectos**. Incluso, fue por un período corto de tiempo que la Asamblea Legislativa utilizó un lenguaje menos amplio. Véase la Sección 4.6 de la derogada Ley Núm. 170-1988, supra, según enmendada por la Ley Núm. 2010-2016.[2] Aun así, en el poco tiempo de vigencia de la Ley Núm. 210-2016, la Asamblea Legislativa expresamente plasmó

---

[2] La Ley Núm. 2010-2016, conocida como la <u>Ley de Reforma del Derecho Administrativo</u>, introdujo enmiendas sustanciales a la legislación vigente en ese momento, que regulaba los procedimientos en las agencias administrativas, es decir, la Ley Núm. 170-1988, <u>Ley de Procedimiento Administrativo del Estado Libre Asociado de Puerto Rico</u>. Como consecuencia, se enmendó la Sección 4.6 de esta última ley, estableciendo lo siguiente en cuanto a las conclusiones de derecho de las determinaciones administrativas:

Sección 4.6. — Alcance de la Revisión Judicial.

[…]

Las conclusiones de derecho merecerán deferencia judicial, sin menoscabo de la función de revisión judicial.

Confrontado con una solicitud de revisión judicial el tribunal tomará en consideración los siguientes principios:

(a) presunción de corrección;
(b) especialización del foro administrativo;
(c) no sustitución de criterios;
(d) deferencia al foro administrativo; y,
(e) la decisión administrativa sólo se deja sin efecto ante una actuación arbitraria, ilegal o irrazonable, o ante determinaciones huérfanas de prueba sustancial en la totalidad del expediente.

Sin embargo, tan solo un año después, la Asamblea Legislativa aprobó la ley que regula actualmente los procedimientos administrativos, a saber la LPAU, supra, derogando así la Ley Núm. 2010-2016 y la Ley Núm. 170-1988.

su intención de no menoscabar la función de revisión del Poder Judicial. No podía ser de otra forma para mantener la adecuada armonía en la interacción de la separación de poderes.

Sin embargo, coincido con el planteamiento del Profesor Luis E. Rodríguez Rivera, en el sentido de que, en la práctica, la deferencia se ha expandido hasta tal punto que se ha convertido en el escudo para la Rama Ejecutiva en vez de la espada para la Rama Judicial. Véase, Luis E. Rodríguez Rivera, Revisión judicial y el Derecho Administrativo: Análisis crítico de la norma de deferencia judicial y comentarios sobre su aplicación en el Derecho Ambiental, 69 Rev. Jur. UPR 1153 (2000). Ello, en parte, porque no es lo mismo evaluar la razonabilidad de una acción administrativa a la luz del propósito legislativo que evaluar si la acción es razonable a base de la evidencia sustancial que obra en el expediente.

Según el Profesor Rodríguez Rivera, se le ha otorgado demasiada deferencia a aquellas interpretaciones de derecho que se consideran razonables a la luz de las pautas establecidas por la Asamblea Legislativa. Todo esto, bajo el razonamiento de que las agencias poseen un conocimiento especializado. Íd., pág. 1158. Reconozco que los tribunales apelativos otorgamos deferencia judicial a las determinaciones administrativas con el propósito de garantizar la autenticidad de ese conocimiento especializado y la experiencia que suelen poseer las agencias. Sin embargo,

no siempre las agencias administrativas cuentan con dicho conocimiento especializado ni con la experiencia suficiente. Entre los fundamentos que sustentan esta realidad, discutidos por el Profesor Rodríguez Rivera, se destacan: la creación de nuevas agencias o su reestructuración, la falta de peritaje real de quienes toman la determinación administrativa y la crisis presupuestaria. Íd., págs. 1160-1161.

Por su parte, la Profesora Érika Fontánez Torres considera que esta deferencia responde al discutido y muy criticado principio del paradigma tradicional, donde el experto es considerado hacedor de política pública. Según este enfoque, se considera que la agencia maneja los asuntos con neutralidad y desde una perspectiva puramente científica. Ciertamente, aun bajo esta visión, se ha reconocido que la ciudadanía representa una fuente epistemológica importante. En ese sentido, la Profesora Fontánez Torres cuestiona el que se haya optado por anclarse "en la doctrina de deferencia en su sentido más amplio, dando al traste con las aportaciones de la ciudadanía en los procesos administrativos". Érika Fontánez Torres, El derecho a participar: Normas, estudios de caso y notas para una concreción, 68 Rev. Col. Abog. PR 658-659 (2007).

En virtud de lo anterior, la Opinión de este Tribunal ciertamente abonará a atender esas preocupaciones y, no menos importante, a propiciar que en la práctica los tribunales no utilicen la deferencia judicial a las

decisiones administrativas como un escudo para evitar escudriñar si las conclusiones de derecho de una agencia administrativa son correctas. A modo de ejemplo, permitirá que la esfera de revisión judicial se fortalezca y podamos adentrarnos en la proporcionalidad de las multas o sanciones irrazonables que, en ocasiones, imponen las agencias administrativas. De esa manera, desalentamos a que se abran las puertas al automatismo que conlleva la escala más rígida y restrictiva de la deferencia judicial, según propuse en la Opinión disidente emitida en OCS v. Triple-S, 191 DPR 536 (2014) (Sentencia).

De acuerdo con lo anterior, en el contexto de las penalidades administrativas, "a los tribunales [les] compete evaluar la proporcionalidad entre penalidad y falta, así como la determinación de si la sanción es demasiado fuerte o excesiva en relación con la conducta imputada". Íd., pág. 557 (Op. disidente del Juez Asociado señor Estrella Martínez). Por tanto, el principio de proporcionalidad evita que la deferencia excesiva ante las decisiones administrativas en el ámbito de la imposición de penalidades sea un obstáculo para la revisión judicial cuando estas penalidades sean arbitrarias, caprichosas, irrazonables y desproporcionadas a la conducta sancionada.

Reitero mi conformidad con la directriz inequívoca de que los foros judiciales actúen con el rigor que amerita la revisión de una determinación administrativa, ejerciendo el deber de asegurar que las conclusiones de derecho sean

correctas en todos sus aspectos. De este modo, erradicamos la errónea noción que permea en algunas instancias judiciales y en algunos foros administrativos de que la deferencia judicial es sinónimo de una presunción de corrección difícilmente rebatible. En efecto, lo reafirmado hoy entierra la "doctrina genérica y vaga que sugiere precisamente tener confianza a ciegas en las agencias."[3]

Al igual que advierte el Profesor William Vázquez Irizarry, tampoco se trata de presumir que toda decisión administrativa debe ser revocada, sino de procurar el justo balance de que quien impugne una determinación de una agencia se encuentre en la misma posición que cualquier apelante que cuestione ante los foros apelativos una decisión del foro de primera instancia.[4]

Finalmente, esta *Opinión* es cónsona con el llamado que realicé durante el Tercer Congreso de Derecho Administrativo, en el cual planteé la necesidad de adoptar y desarrollar una serie de principios de acceso a la justicia para combatir las barreras en el Derecho Administrativo, a saber:

> (1) la participación ciudadana informada y constructiva; (2) la transparencia y la educación; (3) **la simplificación de las leyes y procedimientos;** (4) **acceso a una revisión judicial efectiva;** (5) **delinear los contornos de una deferencia administrativa contextualizada;** (6) promover la agilidad procesal sin atropellar las garantías

---

[3]Véase, W. Vázquez Irizarry, supra, nota al calce 1.

[4]Íd.

individuales y colectivas en el camino; (7) utilizar los métodos alternos como solución antes que la litigación, y (8) **asumir un rol más activo, por parte de los operadores y operadoras del Derecho**. Estos principios requieren una reformulación de conceptos jurídicos, tal como conocemos algunos de ellos hoy, para darle un nuevo contenido. (Negrillas suplida). Luis F. Estrella Martínez, <u>Principios de Acceso a la justicia para combatir las barreras en el Derecho Administrativo</u>, 86 Rev. Jur. UPR 849 (2017).

Ciertamente, con la *Opinión* de este Tribunal hemos reafirmado acertadamente los contornos de la deferencia judicial a las decisiones administrativas para promover un acceso a una revisión efectiva y fomentar que los operadores y las operadoras del Derecho ejerzamos un rol más activo. Ante ese cuadro, estoy conforme. Resta ser consecuente y velar que, en la práctica, y caso a caso, se cumpla con lo aquí reafirmado.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Rolando Vázquez y/o Héctor L. Torres<br><br>Peticionarios<br><br>v.<br><br>Consejo de Titulares y Junta de Directores del Condominio Los Corales, Raymond Torres Negrón, Agente Administrador<br><br>Recurridos<br><br>Departamento de Asuntos del Consumidor<br><br>Peticionarios<br><br>_____<br><br>Rolando Vázquez y/o Héctor L. Torres<br><br>Peticionarios<br><br>v.<br><br>Consejo de Titulares y Junta de Directores del Condominio Los Corales, Raymond Torres Negrón, Agente Administrador<br><br>Recurridos | CC-2024-331<br><br>cons. con<br><br>CC-2024-335 | *Certiorari* |

Opinión Disidente emitida por el Juez Asociado SEÑOR COLÓN PÉREZ.

En San Juan, Puerto Rico, a 21 de mayo de 2025.

Los hechos que dan margen al presente litigio se recogen con particular precisión en la *Opinión* que hoy emite este Tribunal, razón por la cual hemos decidido adoptar los mismos por referencia. En esencia, y a la luz de éstos, en esta ocasión, estábamos llamadas y llamados a determinar, únicamente, si el Consejo de Titulares de un condominio, sujeto al régimen de propiedad horizontal, podía contratar

como Agente Administrador a un titular del mismo condominio sin antes evaluar, como mínimo, tres (3) cotizaciones de servicios profesionales para la referida posición. A nuestro juicio, -- y contrario a lo resuelto por una mayoría de mis compañeras y compañeros de estrado --, correspondía responder dicha interrogante en la negativa.[1]

Para arribar a la anterior conclusión, -- lejos de adentrarnos en un análisis del esquema de derecho administrativo vigente en nuestra jurisdicción --, bastaba con examinar lo dispuesto en el Art. 58 de la Ley Núm. 129 de 16 de agosto de 2020, también conocida como la Ley de Condominios de Puerto Rico, *infra* (en adelante, "Ley Núm. 129-2020"). Ello pues, la referida disposición legal, **en un lenguaje diáfano**, dispone lo siguiente:

> **Sólo se podrán contratar servicios profesionales ofrecidos por personas que sean titulares del condominio**, miembros de la Junta de Directores, o personas relacionadas hasta el segundo grado por consanguinidad con los miembros de la Junta, con titulares del condominio, o con el Agente Administrador, **si durante el periodo de evaluación previo a la contratación se solicitaron y evaluaron al menos tres (3) cotizaciones para el mismo servicio.** (Énfasis suplido). Ley Núm. 129-2020, 31 LPRA sec. 1923c.

Como se puede apreciar, la normativa a la que hemos hecho referencia, -- la cual, como hemos mencionado, por sí sola, era suficiente para disponer correctamente de los asuntos que hoy nos ocupan --, es en extremo clara. En aquellas instancias

---

[1] **Como cuestión de hecho, la agencia administrativa con el conocimiento experto en estos asuntos, -- entiéndase, el Departamento de Asuntos del Consumidor --, así también lo sentenció en cierta *Resolución* emitida el 31 de enero de 2024 relacionada con el caso de marras.**

en que se pretenda contratar servicios profesionales por parte de personas que son titulares de determinado condominio será necesario que, previo a su contratación, se hayan solicitado y evaluado, al menos, tres (3) cotizaciones para el servicio que se ofrece, reza la misma.

Y ese requisito de ley, -- es decir, el exigir al menos tres (3) cotizaciones cuando se vaya a contratar un servicio profesional que ofrece un titular --, es uno que no opera en el vacío. El mismo tiene un fin ulterior, a saber: proteger a los condominios de prácticas desleales llevadas a cabo por proveedores de servicios que son, a su vez, titulares.

**En específico, el Art. 58 de la Ley Núm. 129-2020,** *supra*, **pretende evitar escenarios de conflicto de interés en la contratación servicios profesionales mediante paga.** M. Godreau y M. Hernández Gutiérrez, *El condominio: el régimen de propiedad horizontal en Puerto Rico*, 3ra ed., San Juan, Ediciones SITUM, 2023, pág. 327. **Además, busca asegurar que el Consejo de Titulares pueda elegir la propuesta de servicio que responda mejor a sus propios intereses,** *Íd.*, pág. 328, **garantizando así, la pureza y la transparencia de las tareas que éste último realiza.**

Tales intereses, de tan singular valor para todo aquel o toda aquella que resida en una propiedad sujeta al régimen de propiedad horizontal, eran unos que este Tribunal estaba llamado a custodiar. Lamentablemente, -- y basado, a nuestro juicio, en una errónea interpretación de lo resuelto por este

Alto Foro en *Cólon Ortiz v. Asoc. Cond. B.T.I.*, 185 DPR 946 (2012) --, una mayoría de esta Curia no lo entendió así.

Y es que, si bien es cierto que en *Cólon Ortiz v. Asoc. Cond. B.T.I.*, *supra*,[2] este Tribunal determinó que, **una vez** **contratado**, el Agente Administrador es un mandatario del Consejo de Titulares, lo que lo excluye de ser catalogado como un servicio profesional (o contratista independiente), igualmente cierto lo es que, tal conclusión no se debió adoptar, de manera automática, y sin mayor análisis, para fines de disponer de los asuntos ante nuestra consideración. Esto así, puesto que, de un examen, detenido y cuidadoso, de lo resuelto por esta Curia en *Cólon Ortiz v. Asoc. Cond. B.T.I.*, *supra*, claramente se desprende que, para que entre un Consejo de Titulares y un Agente Administrador nazca la relación jurídica de mandante y mandatario,[3] es necesario que previo a ello, se dé la contratación de determinado servicio

---

[2] En particular, dicho caso se resolvió en **el contexto de dos controversias** **de índole laboral** en las cuales los Agentes Administradores de determinados condominios habían reclamado ser beneficiarios del pago de ciertas compensaciones laborales luego de que fuesen despedidos. A tales efectos, el Tribunal se dio la tarea de analizar la relación jurídica entre el Consejo de Titulares y el Agente Administrador de un condominio sujeto al régimen de propiedad horizontal. Luego de estudiar la normativa aplicable, esta Curia concluyó que los administradores en funciones son mandatarios del Consejo de Titulares, por lo que, al ser removidos de sus puestos, no tienen derecho a ninguna "indemnización más allá del rembolso que le corresponde, como mandatario, por los gastos incurridos." *Cólon Ortiz v. Asoc. Cond. B.T.I.*, 185 DPR 946, 975 (2012).

[3] En lo pertinente, el mandato se define como el contrato en donde "el mandatario se obliga a realizar uno o más actos jurídicos en interés del mandante". Art. 1401 del Código Civil, 31 LPRA sec. 10361. Cabe señalar, que este tipo de contrato se caracteriza por sustentarse en una relación de confianza y fiducia entre las partes. *Cólon Ortiz v. Asoc. Cond. B.T.I.*, *supra*, pág. 980; *Mccormick v. González Martínez y otros*, 49 DPR 473, 479 (1936).

profesional.[4] En lo que respecta a los asuntos que hoy nos ocupan, en esa etapa todavía no nos encontramos.

En ese sentido, quien, **en la etapa previa a la contratación**, se ofrezca a administrar un condominio sujeto al régimen de propiedad horizontal, lo que está ofreciendo al Consejo de Titulares es un servicio profesional, como cualquier otro, que, -- conforme lo establece el Art. 58 de la Ley Núm. 129-2020, *supra* --, requiere cumplir con el requisito de solicitar y evaluar, al menos, tres (3) cotizaciones previo a su contratación. Así podía contemplarlo la Asamblea Legislativa y, en efecto, de manera clara y libre de ambigüedad, lo contempló.

En fin, como principio cardinal de hermenéutica, el Artículo 19 del Código Civil, 31 LPRA sec. 5341, establece que

---

[4] En *Cólon Ortiz v. Asoc. Cond. B.T.I.*, *supra*, este Tribunal expresó lo siguiente al disponer del asunto ante su consideración:

> **De lo anterior podemos concluir, primeramente, que la relación entre la persona escogida y la comunidad de residentes es pertinente a la caracterización de la relación contractual entre el administrador y el condominio. Si la persona contratada es un tercero ajeno a la comunidad,** ya sea una compañía dedicada a ofrecer servicios de administración o una persona natural que se dedica a ofrecer dichos servicios a más de un condominio, **estaremos ante un mandatario** y la relación será gobernada por la figura del contrato de mandato o, si las partes así lo han convenido, por un contrato mixto. Igual conclusión se requiere en el supuesto del tercero que dedica su tiempo exclusivamente a la administración de un condominio.
>
> En vista de lo anterior, resolvemos que cuando se trate de un "agente administrador" en el régimen de propiedad horizontal, éste será considerado un mandatario sujeto a las disposiciones pertinentes del Código Civil, según atemperadas por la Ley de Condominios. *Íd.*, pág. 967. (Énfasis nuestro).

Dicho ello, es menester señalar que, en *Cólon Ortiz v. Asoc. Cond. B.T.I.*, *supra*, el Tribunal no aplicó tal norma de manera automática a las controversias que tenía ante sí. Por el contrario, se hizo un análisis caso a caso de las funciones y prerrogativas particulares que tenía cada Agente Administrador contratado antes de ser despedido, previo a determinar la relación que existía entre éstos y el respectivo Consejo de Titulares. *Íd.*, págs. 980-981.

"[c]uando la ley es clara y libre de toda ambigüedad, su texto no debe menospreciarse bajo el pretexto de cumplir su espíritu".[5] *Véase además*, *Comisionado de Seguros de Puerto Rico v. Point Guard Insurance Company, Inc.*, 205 DPR 1005, 1028 (2020). Cónsono con ello, "el primer paso al interpretar una ley es remitirnos al propio texto de ésta, ya que cuando el legislador se ha expresado en un lenguaje claro e inequívoco, [como claramente lo hizo en la ley aquí bajo estudio], dicho texto es la expresión por excelencia de la intención legislativa". *Comisionado de Seguros de Puerto Rico v. Point Guard*, *supra, págs. 1028-1029; Rosa Molina v. ELA*, 195 DPR 581, 589 (2016); *Cordero et al. v. A.R.Pe et al.*, 187 DPR 445, 456 (2012). Es decir, "no era necesario, [como hoy lo hace una mayoría de este Tribunal en la causa de epígrafe, al elucubrar en las entrañas del derecho administrativo estatal y federal], indagar más allá de la ley para cumplir con su propósito legislativo". *Comisionado de Seguros v. Point Guard, supra, pág. 1029; San Gerónimo Caribe Project v. Registradora*, 189 DPR 849, 866 (2013); *Cordero et al. v. A.R.Pe et al., supra*, pág. 456.

---

[5] En esa dirección, el Prof. Jorge Farinacci Fernós nos explica que antes de aplicar tal regla de hermenéutica, debemos cercióranos, utilizando otros cánones de interpretación, que la letra de la ley, en efecto, es clara. J. M. Farinacci Fernós, *Hermenéutica puertorriqueña: Cánones de interpretación jurídica*, San Juan, Editorial, InterJuris, 2019, pág. 73. De ser ese el caso, -- como lo es aquí --, el texto mismo revelará su contenido comunicativo y tal lenguaje tendrá primacía en la tarea interpretativa. *Íd.* En esos escenarios, **"la claridad textual evita [...] que utilicemos otras herramientas interpretativas para variar el contenido comunicativo del texto."** *Íd.*, pág. 72.

Por ello, respetuosamente disentimos.


                                    Ángel Colón Pérez
                                     Juez Asociado