<table>
<tr><td colspan="3" align="center">Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL ESPECIAL</td></tr>
<tr>
<td>DENNIS O. GUTIÉRREZ MIRANDA, JULIANNA A. ROSALES AYBAR-IMBERT EFECTIVE ADVERTING SPECIALTIES, INC.<br><br>Recurridos<br><br>V.<br><br>BELLA RETAIL GROUP LLC. D/B/A FLAGSHIP CHRYSLER<br>FCA US, LLC<br>POPULAR AUTO LLC<br><br>Recurrente</td>
<td>KLRA202500136<br><br>Consolidado con:<br><br>KLRA202500139</td>
<td>*Revisión de Decisión Administrativa* procedente del Departamento de Asuntos del Consumidor<br><br>Caso Núm.:<br>ARE-2021-0003256<br><br>Sobre:<br>Compra Venta de Vehículos de Motor</td>
</tr>
</table>

Panel integrado por su presidente; el Juez Rivera Colón, la Juez Lebrón Nieves y el Juez Rodríguez Flores

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 23 de junio de 2025.

El 7 de marzo de 2025, compareció ante este Tribunal de Apelaciones, FCA US LLC (en adelante, FCA US) mediante *Recurso de Revisión Judicial* con identificación alfanumérica KLRA202500136 y, Bella International LLC (en adelante, Bella International), mediante *Recurso de Revisión Judicial* con identificación alfanumérica KLRA202500139.[1] En ambos recursos, los recurrentes nos solicitan que revisemos la *Resolución* emitida el 30 de diciembre de 2024 y notificada el 3 de enero de 2025[2], por el Departamento de Asuntos del Consumidor (en adelante, DACo). En virtud de esta, el DACo declaró Ha Lugar la *Querella* presentada por el señor Dennis O. Gutiérrez (en adelante, señor Gutiérrez Miranda o parte recurrida).

---

[1] Consolidados mediante *Resolución* emitida el 13 de marzo de 2025.
[2] Enviada mediante correo postal el 7 de enero de 2025.

Número Identificador

RES2025 _____

Por los fundamentos que expondremos a continuación, se confirma la *Resolución* recurrida.

**I**

Los hechos que propiciaron el recurso ante nuestra consideración son los que adelante se esbozan. El 31 de agosto de 2021, Effective Advertising Specialties, Inc. (EAS) y el señor Gutiérrez Miranda, la señora Julianna A. Rosales Aybar-Imbert y la Sociedad Legal de Gananciales compuesta por ambos (en adelante y en conjunto, parte recurrida), presentaron una *Reclamación/Querella Urgente* ante el DACo en contra de la parte recurrente. En su querella, la parte recurrida indicó que, EAS adquirió un vehículo de motor marca RAM modelo 1500 del año 2021, mediante un arrendamiento financiero abierto con Popular Auto en Bella Retail Group. La parte recurrida alegó que, dicho vehículo confrontaba ciertos problemas mecánicos que le impedían utilizarlo. En específico, expresó que, el vehículo tenía un defecto que hacía que el mismo se detuviera abruptamente cuando estaba en marcha sin importar la velocidad en la que anduviera. Sostuvo que, como consecuencia de ese problema, el conductor perdía total control del vehículo y que ello conllevaba un peligro para su seguridad y la de su familia. Adujo, además, que, la parte recurrente no había logrado identificar el verdadero problema y que únicamente se limitaba a cambiar el alternador, el cual, a su juicio, se dañaba cada vez que ocurría la situación descrita con el vehículo. Explicó que, ante tal situación llevó el vehículo varias veces al concesionario. Pese a que el concesionario le aseguraba que había arreglado el vehículo, este nuevamente confrontó el mismo problema repetidas veces. Posteriormente, volvió a dejar el vehículo luego de otra vez confrontar el mencionado problema y decidió no llevárselo hasta tanto solucionaran de manera efectiva dicho problema. En su querella, la parte recurrida incluyó varias causas de acción, a saber:

saneamiento por vicios ocultos, resolución del contrato y costas y honorarios de abogado por temeridad.

En respuesta, FCA US presentó la *Contestación a Querella*. Solicitó que se desestimara la querella con perjuicio y la imposición de honorarios de abogado.

Por otro lado, el 15 de octubre de 2021, Bella International presentó la *Contestación a la Querella de Bella Retail Group, Inc.* En esta alegó que, había cumplido con todas sus obligaciones respecto a la parte recurrida, y que, el vehículo no adolecía de ninguna condición o defecto que no hubiese sido atendido de forma oportuna y efectiva. A su vez, solicitó la desestimación de la querella bajo el fundamento de falta de jurisdicción. Lo anterior, debido a que el vehículo en cuestión fue adquirido y registrado a nombre de EAS, quien era una entidad jurídica a la cual, según esta, no le aplicaba la definición de consumidor conforme a la reglamentación aplicable y que, por lo tanto, el DACo carecía de jurisdicción para atender la *Reclamación/Querella Urgente*. Arguyó que, el señor Gutiérrez Miranda carecía de legitimación activa para instar el reclamo por sí.

El 15 de noviembre de 2021, el DACo emitió la *Notificación de Informe de Inspección*. Por medio de esta le concedió a las partes quince (15) días contados a partir del archivo en autos de la notificación para presentar por escrito las objeciones que tuviesen sobre el informe de inspección. Se apercibió a las partes que, si no se presentaban objeciones al informe dentro del término provisto, se consideraría estipulado por las partes. Los resultados del *Informe de Inspección de Vehículos de Motor* llevado a cabo el 13 de octubre de 2021 fueron los siguientes:

> **Hallazgos de la inspección según alegaciones de la querella:**
>
> **Se probó la unidad con el querellante manejándolo y no presentó condición. Al momento de la misma la parte querellante no ha aceptado llevarse la unidad. La parte querellada le indica que debe llevarse la**

**unidad ya que está reparada. La unidad está a nombre de una corporación.**

El 14 de marzo de 2022, FCA US presentó la *Moción Uniéndonos a Solicitud Desestimación Sumaria Presentada por Popular Auto y Oponiéndonos a la Resolución de los Contratos de Compraventa y Financiamiento que Solicita la Parte Querellante.*

Posteriormente, la parte recurrida presentó la *Oposición a Solicitud de Desestimación y Reiterando Solicitud de Remedios con Carácter de Urgencia.* Mientras que la parte recurrente presentó el *Memorando de Derecho en Apoyo a Moción de Desestimación de Bella Retail Group.* Por otro lado, la parte recurrida presentó la *Moción Suplementando Oposición a Moción de Desestimación.* El 4 de mayo de 2022, el DACo emitió la *Resolución Interlocutoria* donde determinó que, tanto EAS y, el señor Gutiérrez Miranda eran consumidores. Consecuentemente, declaró No Ha Lugar la solicitud de desestimación por falta de jurisdicción presentada por la parte recurrente.

Inconforme con la *Resolución Interlocutoria,* Bella International acudió ante este foro mediante *Recurso de Revisión Judicial* en el caso con identificación alfanumérica KLRA202200344. Mediante *Sentencia* emitida el 12 de agosto de 2022, confirmamos la determinación del DACo. Más adelante, Bella International presentó *Certiorari* ante el Tribunal Supremo, el cual fue declarado No Ha Lugar mediante *Resolución* emitida el 18 de noviembre de 2024.

Así las cosas, la parte recurrida presentó la *Reclamación/Querella Urgente Enmendada,* con el propósito de incluir nuevas alegaciones. En específico, alegó que, en el año 2023 el manufacturero del vehículo en controversia, identificó y aceptó que las camionetas modelo RAM del año 2021 tenían un desperfecto mecánico en la programación del *Powertrain Control Module* (PCM).

Sostuvo que, a tales efectos, el manufacturero le notificó dicho problema a la agencia federal National Highway Safety Administration del Departamento de Transportación de los Estados Unidos (NHTSA) y llevó a cabo un *recall* voluntario mediante el cual identificó el arreglo necesario para solucionar el problema, que fue notificado a los dueños de vehículos, incluyendo a la parte recurrida y llevó a cabo el arreglo de manera gratuita. La parte recurrida, indicó que, la descripción del *recall* leía como sigue: "*Some of the above vehicles may experience an engine shut down caused by an over rich fuel condition under certain operating conditions. An engine shut down may result in an unexpected loss of motive power while driving, which can cause a vehicle crash without prior warning*". Aseguró que, dicha descripción era cónsona con los problemas que su vehículo había experimentado y que previamente le había notificado a la parte recurrente. Añadió que, pese a lo anterior, la parte recurrente no había presentado evidencia que demostrara que tal arreglo se había realizado en el vehículo en cuestión y la fecha en la cual se realizó.

Acaecidas varias incidencias procesales, innecesarias pormenorizar, el DACo celebró vista administrativa los días 25 de octubre de 2024 y 8 de noviembre de 2024.

El 30 de diciembre de 2024, la agencia recurrida emitió la *Resolución* cuya revisión nos ocupa. En virtud de esta, emitió las siguientes determinaciones de hechos:

1. El 21 de abril de 2021 Efective Advertising Specialties, Inc. adquirió un vehículo de motor nuevo marca RAM modelo 1500 con número de serie 1C6SRFLT2MN675212 (en adelante el "vehículo") a cambio del pago de $66,902.00. El vehículo fue adquirido mediante Contrato de Arrendamiento Abierto con Popular Auto, LLC en el cual Dennis Gutiérrez compareció como garantizador.[3]

---

[3] Véase Exhibit 1 – Contrato de Arrendamiento.

2.  El 7 de junio de 2021 el Querellante llevó el vehículo al taller de Flagship Bayamón e informó que el vehículo se apagaba corriendo, perdía fuerza y se trancaba, igualmente, que cambiaba automáticamente a parking y encendía el *brake.* De acuerdo con la Hoja de Servicio 220457, se verificó el vehículo y no duplicó la condición. Al momento el vehículo contaba con de 1,716 millas.[4]

3.  El 28 de junio de 2021 el Querellante llevó el vehículo al taller de Flagship Bayamón e informó que el vehículo encendía la luz de check engine, reducía le velocidad y se apagaba. De acuerdo con la Hoja de Servicio 221020, se verificó el vehículo y se encontró código PC64-00- HYBRID PERF - ENGINE SPEED BELOW TARGET DURING AUTOSTART por lo que se reemplazó el Motor Generator Unit (MGU). El vehículo estuvo en el taller de Flagship hasta el 30 de junio de 2021. Al momento el vehículo contaba con 2,690 millas.[5]

4.  El 13 de julio de 2021 el Querellante llevó el vehículo al taller de Flagship Bayamón en grúa e informó que el vehículo se apagaba conduciendo. El vehículo se quedó en el taller de Flagship y se le brindó un vehículo de cortesía al Querellante.[6]

5.  Ante esto, el 31 de agosto de 2021 el Querellante presentó la Querella de epígrafe alegando en síntesis vicios ocultos. Como remedio, el Querellante solícita la resolución del contrato y la imposición de costas y honorarios de abogados.

6.  De acuerdo con la Hoja de Servicio 221475, se verificó el vehículo y se encontró condición, se identificó el código P1C64-00 HYBRID PERF - ENGINE SPEED BELOW TARGET DURING AUTOSTART. Flagship verificó *other hybrid control processor,* el *powertrain control module, engine performance or mechanical problems, transmission mechanical problem,* y *related harness connection* y se encontró que todo estaba bien. Flagship lo consultó con el fabricante y se reemplazó nuevamente el Motor Generator Unit (MGU). Se dejó el vehículo encendido por 1 hora y el vehículo no se apagó, quedando en perfectas condiciones bajo los parámetros del fabricante. Al momento el vehículo contaba con un millaje de 3,267 millas.[7]

7.  El vehículo estuvo en el taller desde el 13 de julio de 2021 al 15 de octubre de 2021.[8]

8.  Como parte del proceso administrativo, el Departamento de Asuntos del Consumidor celebró una inspección del vehículo en controversia el 13

---

[4] Véase Exhibit 2 – Hoja de Servicio 220457.
[5] Véase Exhibit 2 – Hoja de Servicio 221020.
[6] Véase Exhibit 2 – Hoja de Servicio 221475.
[7] *Id.*
[8] *Id.*

de octubre de 2021. Del Informe se desprende lo siguiente:

| RESULTADOS DE LA INSPECCIÓN |
| --- |
| **Hallazgos de la inspección según alegaciones de la querella:** |
| **Se probó la unidad con el querellante manejándolo y no presentó condición. Al momento de la misma la parte querellante no ha aceptado llevarse la unidad.** |
| **La parte querellada le indica que debe llevarse la unidad ya que est[á] reparada.** |
| **La unidad está a nombre de una corporación.** |

**Prueba de carretera:**

| Millaje antes de inspección | Millaje luego de inspección | No aplica |
| --- | --- | --- |
| 3381.8 | 3392.3 | |

| ACCIÓN A SEGUIR | |
| --- | --- |
| ( ) Re-inspección | ( ) Cierre y Archivo |
| ( x ) Vista Administrativa | |

9. Posterior a la inspección, el Querellante accedió a llevarse el vehículo.

10. El 20 de diciembre de 2021 el Querellante llevó el vehículo al taller de Flagship Bayamón por cuarta ocasión e informó que el vehículo se detuvo y se apagó en una intersección mientras estaba corriendo; y que se trancó el guía y el freno. El Querellante se encontraba junto a su hijo. El Querellante dejó el vehículo en el taller y se le brindó un vehículo de cortesía.[9]

11. De acuerdo con la Hoja de Servicio 225790, se verificó el vehículo en una prueba de carretera de 60 millas y el vehículo no presentó la condición descrita. El 22 de febrero de 2022 Flagship se comunicó con el Querellante, quien se negó a llevarse el vehículo.[10]

12. Eventualmente, el Querellante hizo una búsqueda en internet sobre la pieza del Motor Generator Unit (MGU) y encontró un *Safety Recall Report* por parte del National Highway Traffic Safety Administration (NHTSA) para los vehículos 2021 Ram 1500. En esta alerta se describe como defecto el que se apague el motor del vehículo y pueda provocar una pérdida inesperada de potencia motriz mientras se conduce, la que puede causar un accidente de vehículo sin previo aviso. Según el documento, el 6 de abril de 2023 FCA US determinó notificar del safety recall a todos los vehículos afectados.[11]

13. El 14 de abril de 2023 FCA notificó de un New Safety Recall Advanced Comunication - 37A en la que se indicó que ciertos vehículos RAM 1500 pickup podrían experimentar que se apague el

---

[9] Véase Exhibit 5 – Hoja de Servicio 225790 (20/dic./21).
[10] *Id.*
[11] Véase Exhibit 6 – Part 573 Safety Recall.

motor y que pueda provocar una pérdida inesperada de potencia motriz mientras se conduce, lo que puede causar un accidente de vehículo sin previo aviso.[12]

14. El 18 de abril de 2023 el National Highway Traffic Safety Administration presentó un comunicado bajo el tema *Incorrect PCM Software May Cause Engine Stall* en el que identificó un problema en el Powertrain Control Module (PCM) software para ciertos vehículos RAM 1500 del año 2011 e indicó que el remedio era que los concesionarios actualizaran el Powertrain Control Module.[13]

15. Para comienzos de mayo de 2023 el Querellante recibió un Aviso de Seguridad por parte de FCA.[14] Para est[a] fecha el vehículo continuaba en el taller de Flagship.

16. El 7 de mayo de 2024 FCA llevó a cabo una inspección del vehículo, en la que concluyó que el vehículo no tiene un defecto de fábrica alguno que afecte su uso, valor o la seguridad del control y que se encuentra en excelentes condiciones.[15]

17. Para la misma fecha el PCM se había reprogramado bajo el Flash Part # 68502736**AF**.[16]  El Flash Part # previo era 68502736**AD**.[17]

18. Para agosto de 2024 Flagship entregó el vehículo al Querellante en su residencia.   El Querellante no ha utilizado el vehículo.

19. Al momento el vehículo se encuentra al día con los pagos de arrendamiento abierto.

Finalmente determinó lo siguiente:

> **Se declara HA LUGAR la presente Querella. En consecuencia, se decreta la la [sic] resolución del contrato de arrendamiento financiero abierto y la devolución de las contraprestaciones. Se le ordena a Bella Retail Group y FCA US LLC que en el término de treinta (30) días contados a partir de a fecha de notificación de la presente Resolución, devuelvan a Effetive Advertising Specialties Inc., todos los pagos realizados hasta la fecha como parte del contrato de arrendamiento, y cancelen el balance existente a la fecha con Popular Auto. Una vez realizado el pago, el Querellante entregará el vehículo a Bella Retail Group.**

---

[12] Véase Exhibit 9 – New Safety Recall 37-A.

[13] Véase Exhibit 10 – Carta U.S. Department of Transportation (28/abril/23).

[14] Véase Exhibit 12 – Aviso de Recall.

[15] Véase Exhibit 15 – Informe de Inspección FCA.

[16] *Id.*

[17] Véase Exhibit 16 – Vehicule Scan Report 15/julio/21.

En desacuerdo, los recurrentes presentaron mociones de reconsideración respectivamente.

El 5 de febrero de 2025, el DACo emitió *Resolución en Reconsideración* donde declaró No Ha lugar las mociones de reconsideración presentadas por FCA y Bella International.

Inconforme, FCA US presentó *Recurso de Revisión* ante este foro. Por medio de este esgrimió los siguientes señalamientos de error:

- Erró el Departamento de Asuntos del Consumidor en sus determinaciones de hechos y conclusiones de derecho al emitir resolución declarando Ha Lugar la Querella, ordenando la cancelación del arrendamiento financiero y la devolución de las contraprestaciones, al resolver que el vehículo objeto de esta Querella tenía un defecto de fábrica que no había sido reparado, cuando la prueba sustancial en el expediente administrativo, incluyendo la prueba pericial, incluyendo la del investigador del DACo, probó que el vehículo no tenía la condición durante la inspección y, a la fecha de la vista administrativa, estaba reparado y operando dentro de las especificaciones del fabricante.

- Erró el Departamento de Asuntos del Consumidor al emitir Resolución declarando Ha Lugar la Querella, habiendo recibido testimonio del propio querellante que el vehículo es de uso comercial y que efectivamente lo utilizaba para propósitos de su negocio de promoción, lo que confirma que no es un consumidor y que el DACo no es el foro que tiene jurisdicción sobre la materia.

Por su parte, Bella International también presentó *Recurso de Revisión Judicial* en el cual esgrimió los siguientes señalamientos de error:

- Erró el Honorable Departamento de Asuntos del Consumidor al concluir que el Vehículo Objeto no había sido reparado.

- Erró el Honorable Departamento de Asuntos del Consumidor al concluir que el DACo tenía jurisdicción para atender las controversias del presente caso, a pesar del Vehículo Objeto ser uno de uso de explotación comercial.

Luego de varios trámites procesales, innecesarios pormenorizar, los aquí recurrentes presentaron sus respectivos alegatos suplementarios.

El 16 de junio de 2025, la parte recurrida presentó el *Alegato en Oposición*.

**II**

### A. Estándar de Revisión Judicial de Determinaciones Administrativas

De ordinario los tribunales apelativos debemos otorgar deferencia y respeto a las conclusiones e interpretaciones hechas por las agencias administrativas.[18] *Vázquez v. Consejo de Titulares*, 2025 TSPR 56 (2025); *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Pérez López v. Depto. Corrección*, 208 DPR 656, 672 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019).  No obstante, tal norma no es absoluta, es por lo que, nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.  De igual manera, la más Alta Curia ha expresado que, la consideración otorgada por los tribunales no equivale a una renuncia de nuestra función revisora. *Vázquez v. Consejo de Titulares*, supra.

En *Torres Rivera v. Policía de Puerto Rico*, supra, pág. 628, nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales.[19]

---

[18] *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016).
[19] Véase *Super Asphalt v. AFI y otros*, supra, págs. 819-820.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otros*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se debe dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*; *Pérez López v. Depto. Corrección*, supra, pág. 673; *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otros*, supra, pág. 819-820.[20]

Bajo este supuesto, la Sec. 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9675, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), "estableció el marco de revisión judicial de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.* págs. 35-36; *OEG v. Martínez Giraud*, supra, pág. 90*; Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Nobbe v. Jta. Directores*, supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA sec. 9675.

Las determinaciones de hechos contenidas en las decisiones de las agencias, *podrán* ser sostenidas por el tribunal cuando estén basadas en evidencia sustancial que obra en el expediente administrativo. Mientras que, conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. Sección 4.5 de la

---

[20] *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Batista, Nobbe v. Jta. Directores*, pág. 216.

Ley Núm. 38-2017, 3 LPRA sec. 9675; *Vázquez v. Consejo de Titulares*, supra; *OEG v. Martínez Giraud,* supra, pág. 90; *Super Asphalt v. AFI y otros,* supra, pág. 819-820.

Los foros revisores podrán apoyarse en las interpretaciones de las agencias. Sin embargo, dichas interpretaciones "constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía" y no avalar irreflexivamente, como se hacía en el pasado. *Vázquez v. Consejo de Titulares*, supra. En casos administrativos el tribunal deberá realizar su tarea con un "*body of experience and informed judgment*" de la agencia, entre otra información a su disposición. *Íd.* De igual manera, los tribunales deberán ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. *Íd.*

**B. Facultades del Departamento de Asuntos del Consumidor**

El Departamento de Asuntos del Consumidor fue creado mediante la Ley Núm. 5 de 23 de abril de 1973, según enmendada, conocida como la *Ley Orgánica del Departamento de asuntos del Consumidor,* 3 LPRA sec. 341. Este fue creado con el propósito primordial de vindicar e implementar los derechos del consumidor. Art. 3 de la Ley Núm. 5 de 23 de abril de 1973, *supra*, 3 LPRA sec. 341b; *Martínez v. DACo,* 163 DPR 594, 600 (2004); *DACo v. Fcia. San Martin*, 175 DPR 198, 204 (2009). Esta ley, le impone al Secretario de DACo, "el deber ministerial de promover y velar por el cumplimiento *de todas* las leyes, las reglas, los reglamentos y las órdenes que afecten los intereses del consumidor. *Íd.* págs. 204-205. (Citas omitidas).

En sintonía con lo anterior, la referida ley le concede al Secretario del DACo varios poderes y facultades, entre estos se encuentra el atender, investigar y resolver las queja y querellas que los consumidores presenten y servicios adquiridos o recibidos por

parte del sector privado de la economía. Art. 6(c) de la Ley Núm. 5 de 23 de abril de 1973, *supra*, 3 LPRA sec. 3418(e). Además, cuenta con la facultad de "poner en vigor, implementar y vindicar los derechos de los consumidores, tal como están contenidos en todas las leyes vigentes, a través de una estructura de adjudicación administrativa con plenos poderes para adjudicar las querellas que se traigan ante su consideración y conceder los remedios pertinentes conforme a Derecho". Art. 6(d) de la Ley Núm. 5 de 23 de abril de 1973, *supra*, 3 LPRA sec. 3418(e).

Conforme a los poderes delegados, el DACo aprobó el Reglamento de Procedimientos Adjudicativos del DACo, Reglamento 8034 del 14 de junio de 2021. Lo anterior, con el fin de asegurar la solución justa, rápida y económica de las querellas presentadas ante o por el DACo y así promover un procedimiento uniforme para su adjudicación. Regla 1 del Reglamento 8034, *supra*. El referido reglamento aplica a las investigaciones y a los procedimientos administrativos sobre querellas iniciadas por los consumidores o por el DACo. Regla 3 del Reglamento 8034, *supra*. En lo pertinente, la Regla 4 del aludido reglamento define *consumidor* como "toda persona natural, que adquiere o utiliza productos o servicios como destinatario final. Incluye toda otra persona, asociación o entidad que por designación de ley está facultado para presentar su reclamación en el Departamento. Regla 4(f) del Reglamento 8034, *supra*.

Por otro lado, con el fin de garantizar la seguridad, salud y bienestar de la comunidad para evitar que vehículos de motor defectuosos, de gran potencialidad de daño al conductor y otros, transiten por las vías públicas del país, fue creada la Ley de Garantías de Vehículos de Motor, Ley 7 de 24 de septiembre de 1979, según enmendada. *Exposición de Motivos* de la Ley 7 de 24 de septiembre de 1979, *supra*. Mediante este estatuto, se le delegó

al DACo la tarea de proteger a los consumidores de vehículos de motor frente a los intereses del vendedor, distribuidor y manufacturero. *Ortiz Rolón v. Soler Auto Sales et al.*, 202 DPR 689, 697 (2019); *Exposición de Motivos* de la Ley 7 de 24 de septiembre de 1979, *supra*. La Ley 7 de 24 de septiembre de 1979, *supra*, además tiene como propósito proteger al consumidor de vehículos de motor nuevos en Puerto Rico, asegurándole que los vehículos de motor que adquiera cuenten con la misma garantía de fábrica que el fabricante o manufacturero les otorga a esos vehículos en el país donde se manufacturen, independientemente del lugar donde y de quien el consumidor haya adquirido tal vehículo. 10 LPRA sec. 2053. Así, le impone al fabricante o manufacturero de vehículos de motor la responsabilidad de honrar las garantías de fábrica de estos vehículos, y al distribuidor o vendedor la obligación de brindar al consumidor el servicio de garantía de fábrica en Puerto Rico. 10 LPRA sec. 2057. La Ley 7 de 24 de septiembre de 1979, *supra*, dispone que, el fabricante o manufacturero será responsable por aquellos daños que causen los defectos de fabricación, diseño, ensamble o manufactura de los vehículos de motor por él, fabricados o manufacturados. 10 LPRA sec. 2060.

En virtud de este estatuto, el DACo adoptó el Reglamento de Garantías de Vehículos de Motor, Reglamento 7159 del 6 de junio de 2006. *Ortiz Rolón v. Soler Auto Sales et al*, supra, pág. 697. Mediante este, el DACo buscó prevenir las prácticas ilícitas en las ventas de vehículos de motor, y así proteger a los consumidores al exigir que estos sean seguros y sirvan para los propósitos por los cuales fueron adquiridos. *Íd.*; Véase la Regla 2 del Reglamento 7159, *supra*. Según la Regla 4 del Reglamento 7159, *supra*, este deberá ser interpretado liberalmente a favor del consumidor.

La Regla 15.1 del Reglamento 7159, en consonancia con la Ley 7 de 24 de septiembre de 1979, *supra*, dispone que, el

distribuidor autorizado o concesionario, representante de fábrica, distribuidor de fábrica, distribuidor independiente, y vendedor deberá, a nombre y en representación del fabricante o manufacturero, honrar la misma garantía de fábrica que el fabricante o manufacturero otorgue a los vehículos de motor, en términos de millaje y duración, excepto que por ley se estableciera una garantía mínima distinta, y siempre será aplicable la que resulte mayor al alcance y amplitud de sus beneficios.

El aludido Reglamento, dispone, además que, el DACo podrá, a opción del comprador, decretar la resolución del contrato o reducir proporcionalmente el precio de venta de acuerdo con el Código Civil de Puerto Rico, en aquellos casos en que el vendedor, distribuidor autorizado o concesionario, distribuidor de fábrica o fabricante, dentro de los términos de la garantía de fábrica, tuvo oportunidad razonable para reparar uno o más defectos, pero no quiso o no pudo corregirlos.[21] Lo que constituye "oportunidad razonable para reparar" deberá determinarse tomado en cuenta las circunstancias particulares de cada caso.[22]

Cuando existan situaciones que envuelven riesgos inminentes a la seguridad de los ocupantes del vehículo, deberá ser recibido para reparación al momento en que el consumidor lo solicite, en horas laborables.[23]

Finalmente, la Regla 37 del Reglamento 7159, *supra*, dispone que nada de lo dispuesto en el mismo limitará de forma alguna el derecho del consumidor a ejercer cualquier acción que le reconozca mediante las leyes generales o especiales de Puerto Rico, así como las acciones de saneamiento por evicción, saneamiento por vicios

---

[21] Regla 22 del Reglamento 7159, *supra*.
[22] *Íd.*
[23] Regla 29.1 del Reglamento 7159, *supra*.

ocultos o redhibitoria y cualesquiera otras que reconozca el Código Civil de Puerto Rico.

## C. *Teoría General de los Contratos*

Según es sabido, las obligaciones nacen de la ley, los contratos, los cuasicontratos, los actos ilícitos, de los actos u omisiones en las que interviene culpa o negligencia, y de cualquier otro acto idóneo para producirlas, conforme el ordenamiento jurídico. Art. 1063 del Código Civil de Puerto Rico, 31 LPRA sec. 8984; *Universal Ins. v. Popular Auto*, 207 DPR 228, 238 (2021); *NHIC et al. v. García Passalacqua et al.*, 206 DPR 105 (2021). Nuestro Código Civil define el contrato como aquel "negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma provista por ley, para crear, regular modificar o extinguir obligaciones". Art. 1230 del Código Civil de Puerto Rico, 31 LPRA sec. 9751; *Amador v. Conc. Igl. Univ. de Jesucristo*, 150 DPR 571, 581 (2000). El contrato se perfecciona desde que las partes manifiestan su consentimiento sobre el objeto y la causa, es decir, cuando median el objeto, consentimiento y causa. Art. 1237 del Código Civil de Puerto Rico, 31 LPRA sec. 9771; *Pérez Rodríguez v. López Rodríguez et at.*, 210 DPR 163, 186 (2022).

En nuestro ordenamiento jurídico se ha reconocido el principio de libertad de contratación, este faculta a las partes a contratar o no hacerlo con determinada persona, así como pactar los términos y condiciones que tengan por conveniente. Art. 1232 del Código Civil de Puerto Rico, 31 LPRA sec. 9753; *Pérez Rodríguez v. López Rodríguez et at.*, supra, pág. 187; *Burgos López et al. v. Condado Plaza*, 193 DPR 1, 7-8 (2015); *Arthur Young & Co. v. Vega III*, 136 DPR 157 (1994). Sin embargo, tal libertad no es infinita, puesto que, las partes podrán acordar cualquier cláusula que no sea contraria a la ley, a la moral o al orden público. Art. 1232 del Código Civil de Puerto Rico, 31 LPRA sec. 9753; *Burgos López et al. v.*

*Condado Plaza*, supra, págs. 7-8; *Oriental Bank v. Perapi*, 192 DPR 7, 15 (2014). Una vez se perfecciona el contrato, lo acordado en este tiene fuerza de ley entre las partes, ante sus sucesores y ante terceros en la forma que dispone la ley. Art. 1233 del Código Civil de Puerto Rico, 31 LPRA sec. 9754. Finalmente, los tribunales estamos facultados para velar por el cumplimiento de los contratos, y no debemos relevar a una parte del cumplimiento de su obligación contractual cuando tal contrato sea legal, válido y no contenga vicio alguno. *Mercado, Quilichini v. UCPR*, 143 DPR 627 (1997).

Ahora bien, en lo aquí pertinente, nuestro Código Civil define el contrato de compraventa como aquel donde la parte vendedora se obliga a transferir a la parte compradora el dominio de un bien, y esta, a su vez, se obliga a pagarle un precio cierto. Art. 1274 del Código Civil de Puerto Rico, 31 LPRA sec. 9941.

Entre las obligaciones del vendedor se encuentra:

    (a)    Entregar inmediatamente el bien con sus accesorios, libre de todo gravamen, en el lugar y el tiempo convenidos o donde se encuentre el bien en el momento del otorgamiento;

    (b)    Transferir al comprador el dominio del bien;

    (c)    Garantizar al comprador que el bien vendido tiene las cualidades prometidas y que está libre de defectos que disminuyen o destruyen su valor o la aptitud para su uso ordinario o convenido. Una disminución insignificante del valor o la aptitud no se toma en cuenta.

        Cuando un defecto principal se descubre dentro del periodo de la garantía, se presume que el defecto estaba ya presente en el momento que el riesgo pasó al comprador.

        La garantía se extiende durante el tiempo comprendido en el plazo de prescripción de la acción ejercitada por razón de la garantía o durante el tiempo que haya fijado el Departamento de Asuntos del Consumidor o cualquier otra agencia gubernamental;

    […][24]

---

[24] Art. 1287 del Código Civil, 31 LPRA sec. 9991.

Por otro lado, en cuanto a las obligaciones del comprador, el Art. 1288 del Código Civil dispone que está obligado a:

    (a)   Recibir el bien comprado en el lugar y el tiempo convenido, así como los documentos relacionados con el contrato;

    (b)   Pagar el precio en el lugar y el tiempo convenidos o en el momento y el sitio en que el bien vendido le sea entregado;

[…][25] (citas omitidas)

Por otra parte, respecto a la obligación por saneamiento, el Art. 1261 del Código Civil de Puerto Rico dispone que, "la persona que transmite un bien a título oneroso responde por evicción y por los defectos ocultos del bien aunque lo ignorase".[26] Asimismo, el Art. 1263 del Código Civil establece los derechos del adquirente, a saber:

El adquirente puede optar por reclamar la subsanación o reparación de los defectos, la entrega de un bien equivalente total o parcialmente el contrato.

La resolución total solo procede si la evicción o el defecto recaen sobre un aspecto determinante para la adquisición del bien. La misma regla es de aplicación en caso de adquisición conjunta de varios bienes.

En caso de evicción, el adquirente también tiene derecho al resarcimiento de los daños sufridos, salvo que haya actuado con negligencia.

En caso de vicio redhibitorio, el adquirente solo tiene derecho al resarcimiento de los daños sufridos si el transmitente actuó con dolo. (citas omitidas)

[…][27] (citas omitidas)

Finalmente, el vicio redhibitorio es definido como "el defecto oculto en el bien transmitido a título oneroso, existente al tiempo de la adquisición, que hace impropio al bien para su destino o disminuye de tal modo su utilidad que, de haberlo conocido, el adquirente no lo habría adquirido o habría dado menos por él".[28]

Esbozada la norma jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla al recurso ante nos.

---

[25] 31 LPRA sec. 9992.
[26] 31 LPRA sec. 9851.
[27] 31 LPRA sec. 9860.
[28] Art. 1267 del Código Civil, 31 LPRA sec. 9871.

**III**

En su primer señalamiento de error, FCA sostuvo que, DACo incidió al declarar Ha Lugar la Querella y al resolver que, el vehículo en cuestión tenía un defecto de fábrica que no había sido reparado, cuando surgía del expediente administrativo que este no presentaba la condición cuando fue inspeccionado por el investigador del DACo, y que a la fecha de la vista administrativa, estaba reparado y operando dentro de las especificaciones del fabricante.

Asimismo, Bella International como primer señalamiento de error, alegó que, el DACo incidió al concluir que el vehículo no había sido reparado.

Por encontrarse intrínsecamente relacionados, discutiremos los señalamientos de error de forma conjunta. Adelantamos que, no le asiste la razón. Veamos.

Según reseñáramos, 21 de abril de 2021 el señor Gutiérrez Miranda adquirió un vehículo de motor marca RAM modelo Rebel 1500 del año 2021. El 7 de junio de 2021, llevó el vehículo por primera vez, a la garantía debido a que presentó unos desperfectos mecánicos. En específico, describió que, el fallo presentado por el vehículo constaba en que, cuando iba corriendo en este por la carretera, sin previo aviso, se apagaba. Añadió que, la guagua, al apagarse frenaba, activaba la "emergencia" y cambiaba a *parking* sola, sin importar la velocidad a la que el conductor fuera.[29] En ese momento, el *dealer* no encontró problema alguno y el vehículo fue devuelto al señor Gutiérrez Miranda.

En el mismo mes de junio, la parte recurrida tuvo que volver a llevar la unidad al *dealer* debido a que, presentó nuevamente el fallo.[30] Luego de que se verificara el *motor generation unit*, se encontró que este tenía el circuito interno abierto, lo que provocaba

---

[29] TPO de 25 de septiembre de 2024, pág. 14, líneas 17-25.
[30] TPO de 25 de septiembre de 2024, pág. 19, líneas 1-8.

el fallo descrito por la parte recurrida, y que por ello, se remplazó según indicaba el manual de fabricante.[31] Sin embargo, la parte recurrida tuvo que llevar nuevamente la unidad al *dealer* en el mes de julio, debido a que volvió a presentar el fallo alegado, pese a haber sido "arreglado" previamente.[32]

Surge del expediente que, en esa ocasión, Flagship identificó el mismo problema que alegadamente había resuelto y, nuevamente reemplazó el *motor generation unit*. No obstante, el señor Gutiérrez Miranda decidió no llevarse el vehículo. Posteriormente, un inspector del DACo revisó la unidad y esta no replicó el problema, por lo que, el señor Gutiérrez Miranda decidió llevarse el vehículo. No obstante, más adelante tuvo que volver a llevar el vehículo a la garantía en el mes de diciembre debido a que volvió a presentar el mismo problema.[33]

Así las cosas, en abril de 2023, FCA US notificó el *New Safety Recall Advanced Comunication*, en el cual explicó que ciertos vehículos RAM Rebel 1500 del año 2021 pudieran estar experimentando problemas mecánicos, en específico, que se apagara el motor mientras se encontraba manejando. Justo el mismo problema que la unidad del aquí recurrido estaba enfrentando. Cabe destacar que, en el mencionado anuncio, fue reconocido que a la fecha de su emisión, no había un remedio disponible para dicha condición.

Como bien resolvió la agencia recurrida, la parte recurrente no presentó prueba sobre cómo, cuándo o dónde se llevó a cabo la supuesta reprogramación del PCM. Así como, no presentó una hoja de servicio que acreditara dicho trámite. La parte recurrida se vio afectada de forma directa al no poder disfrutar de su vehículo por

---

[31] TPO de 25 de septiembre de 2024, pág. 21, líneas 5-10.
[32] TPO de 25 de septiembre de 2024, pág. 22, líneas 2-26.
[33] TPO de 25 de septiembre de 2024, pág. 27 líneas 10-3; pág. 28, línea 1.

motivo del defecto presentado en el mismo. El tiempo transcurrido sin que el *dealer* atendiera dicho asunto de forma diligente es uno irrazonable y en contravención con el derecho reseñado.

Puntualizamos que, nuestro ordenamiento civil dispone que, el vendedor de un bien tiene la obligación de garantizar al comprador que el bien vendido tiene las cualidades prometidas y que está libre de defectos que disminuyen o destruyen su valor o la aptitud para su uso ordinario o convenido.[34]

Ninguna persona adquiere un vehículo para no utilizarlo. La condición persistente manifestada en el vehículo le impidió al señor Gutiérrez Miranda su uso y disfrute, puesto que, se vio imposibilitado de utilizar un vehículo que atentaba contra su seguridad y que constituía un riesgo para la seguridad pública.

Conforme al Reglamento 7159, *supra*, el DACo podrá, a opción del comprador, decretar la resolución del contrato o reducir proporcionalmente el precio de venta de acuerdo con el Código Civil de Puerto Rico, en aquellos casos en que el vendedor, distribuidor autorizado o concesionario, distribuidor de fábrica o fabricante, dentro de los términos de la garantía de fábrica, tuvo oportunidad razonable para reparar uno o más defectos, pero no quiso o no pudo corregirlos.[35]

Al amparo de nuestra función revisora, de un minucioso examen del expediente, concluimos que, se desprende que la determinación de la agencia recurrida estuvo sostenida por evidencia sustancial que obra en el mismo. De igual manera, al analizar las conclusiones de derecho realizadas por la agencia, somos del criterio que, esta actuó dentro del marco de sus facultades estatutarias.

---

[34] Art. 1287 del Código Civil, 31 LPRA sec. 9991.
[35] Regla 22 del Reglamento 7159, *supra*.

Los recurrentes, en sus respectivos recursos, como segundo señalamiento de error, sostienen que, el DACo incidió al declarar Ha Lugar la *Querella*, debido a que el vehículo era de uso comercial, lo que confirmaba que, no era consumidor y que el DACo no era el foro que ostentaba jurisdicción sobre la materia.

Conforme fue resuelto por este Foro en la *Sentencia* emitida el 12 de agosto de 2022, Effective Advertizing Specialities es consumidor bajo la reglamentación aplicable, y por ello, DACo ostentaba jurisdicción para atender el reclamo de la parte recurrida. Lo anterior, en consonancia con lo previamente resuelto por el foro administrativo. Asimismo, Bella presentó un *Certiorari* ante el Tribunal Supremo, el cual fue declarado No Ha Lugar mediante *Resolución* emitida el 18 de noviembre de 2024, reiterando así lo resuelto por este foro revisor. Es decir, dicha determinación advino *final y firme.*

La parte recurrente pretende plantear nuevamente la misma controversia ya resuelta, haciendo alusión a que, el vehículo en cuestión era de uso comercial, al amparo de los *mismos fundamentos* sobre que fue adquirido por una entidad jurídica que no podía ser clasificada como consumidor. Como mencionáramos, debido a que nuestro dictamen advino *final y firme,* los recurrentes se encuentran imposibilitados de revivir un asunto que ya fue resuelto con finalidad.

Nuestro ordenamiento jurídico dispone que, los derechos y obligaciones adjudicados mediante un dictamen judicial que adviene *final y firme* constituyen la ley del caso.[36] Es por lo que, las controversias que han sido adjudicadas por el foro de primera instancia o por un tribunal apelativo no pueden reexaminarse.[37]

---

[36] *Berkan et al. v. Mead Johnson Nutrition*, 204 DPR 183, 200 (2020); *Félix v. Las Haciendas,* 165 DPR 832, 843 (2005); *Mgmt. Adm. Servs. Corp. v. ELA*, 152 DPR 599, 606 (2000); *Sánchez Rodríguez v. López Jiménez,* 118 DPR 701, 704 (1987).
[37] *Cacho Pérez v. Hatton Gotay*195 DPR 1, 8-9 (2016); *Berkan et al. v. Mead Johnson Nutrition,* supra, págs. 200-201.

## IV

Por los fundamentos que expondremos a continuación, se confirma la *Resolución* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones