| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL ESPECIAL | | |
| JOSÉ PASSALACQUA RODRÍGUEZ<br><br>Recurrente<br><br>v.<br><br>SECRETARÍA AUXILIAR DE POLÍTICA CONTRIBUTIVA DEL DEPARTAMENTO DE HACIENDA Y DEPARTAMENTO DE HACIENDA<br><br>Recurridos | TA2025RA00047 | ***Revisión Administrativa***<br>Procedente del Departamento de Hacienda<br><br>Caso Núm. 2024DCRC001<br><br>Sobre: Crédito Contributivo – Ley 212 de 29 de agosto de 2002 |

Panel integrado por su presidenta, la Jueza Grana Martínez, la Jueza Díaz Rivera y la Jueza Lotti Rodríguez.

Grana Martínez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de noviembre de 2025.

El recurrente, señor José Passalacqua Rodríguez solicita en su recurso que revisemos la denegatoria del Departamento de Hacienda a concederle los créditos contributivos provistos en la Ley para la Rehabilitación de los Centros Urbanos.[1]

Por su parte, el recurrido, Departamento de Hacienda presentó su oposición al recurso representado por el Procurador General. Con el beneficio de las posturas de ambas partes, resolvemos.

**I**

Los hechos pertinentes para atender este recurso son los siguientes. El recurrente acudió a la Oficina de Apelaciones Administrativas del Departamento de Hacienda para que revisara la denegatoria de la Secretaria Auxiliar de Política Contributiva a

---

[1] Ley Número 212 de 29 de Agosto de 2002, hoy derogada por la Ley Número 40-2020.

concederle el crédito contributivo reconocido en la Ley para la Rehabilitación de los Centros Urbanos. Durante la vista administrativa la Secretaria Auxiliar alegó que no podía evaluar la solicitud del recurrente, porque sometió el Certificado de Cumplimiento fuera del término legalmente establecido. El recurrente alegó que la agencia pretendía aplicarle los términos establecidos en la Ley Núm. 40-2013, Ley de Redistribución y Ajuste de la Carga Contributiva, a pesar de que el Municipio de San Juan emitió el Certificado de Elegibilidad, previo a su vigencia. Según el recurrente el municipio expidió el certificado el 19 de junio de 2013. El recurrente adujo que comenzó a hacer la obra inmediatamente se expidió el certificado y que hizo la inversión para beneficiarse de los créditos contributivos.[2]

El Departamento de Hacienda determinó los hechos siguientes. El 19 de junio de 2013, el Municipio de San Juan expidió el Certificado de Elegibilidad en el que aprobó preliminarmente la propuesta de rehabilitación del recurrente. El 17 de marzo de 2023 el Municipio emitió el Certificado de Cumplimiento al Departamento de Hacienda. La sección 1051.12(a)(5)(C) del Código requiere que el Certificado de Cumplimiento se presente ante el Departamento de Hacienda en o antes del 31 de diciembre de 2019. El Departamento únicamente emitiría cartas o determinaciones luego de recibir la certificación de cumplimiento del proyecto. La agencia no podía evaluar, tramitar, otorgar o conocer ningún crédito contributivo o autorizar ningún proyecto de transacción que resultara o pudiera resultar en la generación de créditos contributivos.[3]

---

[2] Véase Querella en el Sistema Unificado de Manejo y Administración de casos (SUMAC) entrada número 1.

[3] SUMAC entrada número 2 ante TPI. Se identifica TPI toda vez que SUMAC así lo identifica como apéndice, aunque no provenga del Tribunal de Primera Instancia sino de la agencia recurrida.

Según la agencia, la Sección 1051 12 (a)(5)(A) del Código permitía conceder por excepción los créditos contributivos provistos en la Ley 212-2002, *supra,* condicionado a que:

1.  El Certificado de Elegibilidad se hubiese presentado al Departamento el 30 de junio de 2013 y,

2.  El Certificado de Cumplimiento se hubiese presentado ante el Departamento en o antes del 31 de diciembre de 2019.

La agencia concluyó que no se configuró la excepción que permite la concesión del crédito contributivo porque: (1) recibió el Certificado de Cumplimiento el 17 de marzo de 2023. El foro administrativo entendió que tampoco se configuraba la excepción contemplada en la Sección 1051.12(a)(5) aplicable a los proyectos comenzados al 1 de julio de 2013. La razón para no hacerlo es que el recurrente comenzó el proyecto el 28 de abril de 2014.[4]

Inconforme, el recurrente presentó este recurso en el que alega que:

1) Erró el Departamento de Hacienda al no conceder la solicitud de crédito contributivo presentada por la parte recurrente.

## II

### LA REVISIÓN JUDICIAL DE LAS DE LAS RESOLUCIONES ADMINISTRATIVAS

La sección 4.5 de la Ley núm. 38-2017, 3 LPRA sec. 9675 limita la revisión judicial a; (1) que el remedio concedido por la agencia sea el apropiado, (2) que la revisión de las determinaciones de hecho sea conforme al criterio de evidencia sustancial y, (3) determinar si las conclusiones de derecho fueron correctas mediante su revisión completa y absoluta. La evidencia sustancial es aquella pertinente que una mente razonable puede aceptar como adecuada para sostener una conclusión. No obstante, esta acepción

---

[4] Id.

no podrá estar sostenida por un ligero destello de evidencia o simples inferencias. El criterio rector siempre estará guiado por la razonabilidad de la determinación de la agencia, luego de considerar el expediente administrativo en su totalidad. *OEG v. Martinez Giraud,* 210 DPR 79, 90 (2022).

La parte que alega que la decisión de la agencia no está basada en evidencia sustancial, tiene que demostrar que en el expediente existe otra prueba que reduce o menoscaba el valor probatorio de la impugnada. Dicha parte tiene que demostrar que la agencia no resolvió de forma razonable considerando la totalidad de la prueba ante su consideración. El tribunal respetará las determinaciones de hecho del foro administrativo, si la parte afectada no demuestra la existencia de otra prueba que establezca que su decisión no está basada en evidencia sustancial o que reduzca o menoscabe el valor probatorio de la impugnada. *Domínguez v. Caguas Expressway Motors, Inc.,* 148 DPR 387-398 (1999).

El Tribunal Supremo de Puerto Rico adoptó en *Vázquez v. Consejo de Titulares,* 2025 TSPR 56, 215 DPR ____ (2025), la norma establecida por el Tribunal Supremo de Estados Unidos en *Loper Bright Enterprises v. Raimondo,* 603 U.S. ____ (2024), 144 S.Ct. 2244, 219 L. Ed 2d 832 (2024) sobre la revisión de las determinaciones de derecho de los organismos administrativos. Nuestro más alto foro judicial local reconoció la obligación de los jueces de cumplir cabalmente con el mandato legislativo de revisar las actuaciones administrativas. Fue enfático en que el legislador dispuso expresamente que los tribunales están obligados a revisar las conclusiones de derecho de las agencias en todos sus aspectos. El tribunal hizo hincapié que el texto de la ley no deja duda alguna de que el legislador quiso eliminar la deferencia a las conclusiones de derecho de las agencias, para que la rama

judicial cumpliera con el objetivo para la que fue creada, de adjudicar las controversias.

Por otro lado, el tribunal reconoció que la determinación del Tribunal Supremo de Estados Unidos era altamente persuasiva, porque nuestra legislación de derecho administrativo se creó inspirada en la *Administrative Procedure Act (APA)*,5 U.S.C. 551 et seg. La decisión advierte que el Tribunal Supremo de Estados resolvió que la deferencia concedida a las agencias era contraria al mandato congresional que la legislación depositaba en las cortes a los efectos de descargar su responsabilidad de interpretar la ley. Según el tribunal, la determinación del foro federal se fundamentó en que: (1) la norma de la deferencia iba en contra de los principios que cimentaban el poder judicial, (2) al igual que en la LPAU el legislador confirió al poder judicial la facultad de decidir todos los asuntos relevantes a la ley, (3) la APA no establece ninguna regla de deferencia que los tribunales deban aplicar a la hora de atender esas cuestiones de derecho y, (4) los tribunales deben ejercer un juicio independiente al determinar el significado de las disposiciones estatutarias. *Vázquez v. Consejo de Titulares,* supra.

No obstante, el Tribunal Supremo de Puerto Rico enfatizó que el foro judicial puede usar las interpretaciones de las agencias como una guía, debido a su acervo de experiencias y criterios informados. Sin embargo, fue enfático que eso no significa avalar ciegamente todas sus determinaciones, como en el pasado. El Tribunal Supremo de Puerto Rico acogió las expresiones del Tribunal Supremo de Estados Unidos, de que el relegar a las agencias la interpretación de las leyes desafía el mandato legislativo que responsabiliza al foro juridicial de adjudicar todas las cuestiones de derecho. Por último, concluyó que, los tribunales deben ejercer un juicio independiente al momento de

evaluar, si una agencia actuó dentro del marco de sus facultades estatutarias. Además, de que contrario al pasado, no tienen que honrar deferencia a la interpretación que hacen las agencias de una ley ambigua. *Vázquez v. Consejo de Titulares, supra.*

## LA INTERPRETACIÓN DE LAS LEYES

El poder y las facultades que tienen las agencias administrativas está delimitado por la ley. El legislador solo confiere a las agencias los poderes necesarios para implementar las leyes que administran. Un organismo administrativo no puede asumir jurisdicción sobre un asunto, a menos que haya sido claramente autorizado. Los tribunales tenemos que evaluar en primera instancia el texto de la ley. Cuando la ley es clara y libre de toda ambigüedad, no debemos menospreciarla con el pretexto de cumplir su espíritu. El lenguaje claro e inequívoco de la ley, es la expresión por excelencia de toda intención legislativa. No obstante, a veces es necesario armonizar todas las disposiciones de la ley, para lograr una interpretación integrada, lógica y razonable de la intención legislativa. Las secciones, párrafos, frases y oraciones de una ley no deben interpretarse aisladamente. Por el contrario, deben ser analizadas conjuntamente considerando todo su contexto de manera integral. *Vázquez v. Consejo de Titulares,* supra*.*

## LEY PARA LA REHABILITACIÓN DE LOS CENTROS URBANOS, LEY NÚM. 212-2002[5]

La Ley Núm. 212, *supra,* concedió incentivos contributivos a quienes les interesaba invertir en la rehabilitación de los centros urbanos. Los participantes tenían que presentar sus propuestas en el municipio donde les interesaba invertir. A su vez, la Oficina de Ordenación Territorial de los municipios con un plan de área o zona histórica tenía que notificar al Secretario de Hacienda la aprobación

---

[5] Esta ley fue derogada por la Ley Núm. 40 de 16 de abril de 2020.

de la propuesta. En aquellos casos donde el municipio no contaba con un plan de área o zona histórica la Directoria tenía que hacer la notificación. La notificación de la aprobación de la propuesta de ninguna manera le daba derecho al promovente a recibir los incentivos. La concesión de los incentivos estaba condicionada a que el promovente tuviera la certificación de que realizó el proyecto. Artículo 4.13, 21 LPRA sección 1095 (f). La Oficina de Ordenación Territorial de los municipios con un plan de área o zona histórica tenía que certificar al Secretario de Hacienda la aprobación de la propuesta y el cumplimiento de sus términos. La Directoria tenía que hacer lo propio en el caso de los municipios sin un plan de área o zona histórica. La certificación ponía al secretario en posición de conceder los incentivos que entrarían en vigor a la fecha de aprobación de la propuesta. Artículos 4.02 y 4.03, 21 LPRA secciones 1095(f) y (g).

### LEY DE REDISTRIBUCIÓN Y AJUSTE DE LA CARGA CONTRIBUTIVA, LEY NÚM. 40-2013

El artículo 22 de la Ley Núm. 40-2013, supra, estableció una moratoria para la concesión de créditos. Esta legislación entró en vigor el 30 de junio de 2013. La moratoria comenzó a partir del 31 de diciembre de 2012 y se extendió hasta antes del 1 de enero de 2016. No obstante, la moratoria no aplicó a; (1) los proyectos cuya construcción estuviera comenzada para el 1 de julio de 2013, (2) los proyectos cuyas certificaciones de elegibilidad se presentaron en el Departamento de Hacienda hasta la fecha de aprobación de la Ley Núm. 40-2013, que fue el 30 de junio de 2013.

### LA REFORMA CONTRIBUTIVA DE PUERTO RICO, LEY NÚM. 257-2018

La Ley Núm. 257, *supra,* enmendó el Código de Rentas Internas para reactivar la moratoria de créditos contributivos, a excepción de los proyectos comenzados al: (1) 1 de julio de 2013, (2) cuyo certificado de elegibilidad se presentó en el Departamento de

Hacienda al 30 de junio de 2013 y, (3) el certificado de cumplimiento al 31 de diciembre de 2019. Por último, Ley 40-2020, ratificó la moratoria de créditos contributivos a partir del 31 de diciembre de 2012 y eximió a los proyectos; (1) cuyo certificado de elegibilidad se presentó en el Departamento de Hacienda al 30 de junio de 2013 y, (2) el certificado de cumplimiento en o antes del 31 de diciembre de 2019.

**III**

El recurrente sostiene que la legislación aplicable es la Ley 212-2002, *supra, vigente* al 19 de junio de 2013, cuando el municipio emitió su Aprobación Preliminar. Su representación legal aduce que para esa fecha no existían limitaciones a la concesión de los créditos contributivos. No obstante, alega que las limitaciones impuestas posteriormente, permiten la concesión de créditos contributivos, siempre que: (1) la Aprobación Preliminar se hubiese presentado en el Departamento de Hacienda al 30 de junio de 2013 y, (2) el Certificado de Cumplimiento en o antes del 31 de diciembre de 2019.

Según el recurrente el municipio expidió la aprobación preliminar el 19 de junio de 2013. No obstante, aduce que puede ser penalizado, porque la presentó en el Departamento de Hacienda el 2 de julio de 2013. El recurrente destaca que hizo una inversión millonaria, debido a: (1) la existencia de los créditos contributivos; (2) que el municipio le hizo creer que su solicitud era oportuna y (3) al tiempo que el Estado le dio a entender que tenía disponible para culminar la obra. Por último, advirtió que la obra sufrió atrasos debido a la ocurrencia del huracán María y de la pandemia.

La parte recurrida sostiene que el recurrido incumplió con los requisitos para recibir los créditos contributivos provistos en la Ley para la Rehabilitación de los Centros Urbanos. Su representación legal alega que la Ley Núm. 40-2013 enmendó la Sección 1051.11

del Código de Rentas Internas para limitar los créditos contributivos, luego del 31 de diciembre de 2012. Además, argumenta que el recurrente tampoco cumple con los requisitos que le permitirían recibir los créditos contributivos vía excepción porque no se presentó en el Departamento de Hacienda; (1) la solicitud de crédito contributivo, antes de que entrara en vigor la Ley Núm. 40, *supra* y, (2) el Certificado de Cumplimiento en o antes del 31 de diciembre de 2019. Por último, advierte que este último requisito constaba en el Código de Rentas Internas desde el año 2018, cuatro años antes de que el recurrente terminara su proyecto.

Nos corresponde determinar, si el foro administrativo interpretó y aplicó correctamente el derecho. Por consiguiente, debemos resolver, si el recurrente tiene derecho a recibir créditos contributivos. En primera instancia tenemos que establecer la fecha en que se entiende cumplido el requisito de elegibilidad o de aprobación preliminar. El recurrente sostiene que es cuando el municipio hizo la aprobación. El recurrido alega que es cuando el municipio la presenta al Departamento de Hacienda.

Luego de cumplir con nuestra obligación de revisar las conclusiones de derecho del Departamento de Hacienda en todos sus aspectos, estamos convencidos que el recurrente no tiene razón. La fecha para determinar la procedencia del crédito contributivo no es cuando el municipio aprobó la propuesta, sino cuando la recibe el Secretario de Hacienda. El legislador hizo claro en la Ley Núm. 212, supra, que el municipio tenía que notificar al Secretario de Hacienda la aprobación de la propuesta. Fue enfático en que el Departamento de Hacienda está en posición de conceder los créditos contributivos, cuando recibe la certificación de cumplimiento de la propuesta. El legislador dispuso expresamente en la Ley Núm. 40, supra, que solo serán beneficiarios de los créditos contributivos los proyectos cuyas certificaciones de

elegibilidad se presentaron en el Departamento de Hacienda hasta fecha de aprobación de la Ley Núm. 40-2013.

El legislador utilizó un leguaje claro e inequívoco en la Leyes Núm. 212 y 40, *supra,* mediante el que manifestó que la fecha a considerar para conceder el crédito contributivo es cuando el municipio somete al Departamento de Hacienda la certificación de elegibilidad. El municipio expidió el certificado de elegibilidad el 13 de junio de 2013. No obstante, lo notificó al Departamento de Hacienda el 2 de julio de 2013. A esa fecha ya el recurrente no podía ser beneficiario del crédito contributivo, porque la fecha límite para presentar el certificado de elegibilidad era el 30 de junio de 2013.

El recurrente tampoco cumplió con el requisito de presentar el Certificado de Cumplimiento en el Departamento de Hacienda en o antes del 31 de diciembre de 2019, como exigió el legislador. El Certificado de Cumplimiento se presentó en la agencia el 17 de marzo de 2023. A esa fecha habían transcurrido más de tres años del plazo límite. Según consta en el certificado la obra comenzó el 8 de abril de 2014 y finalizó el 8 de diciembre de 2022. La representación legal del recurrente atribuye su tardanza en culminar la obra al paso del huracán María y a la pandemia. Sus excusas no son convincentes. El huracán María ocurrió el 20 de septiembre de 2017. La pandemia ocurrió en el año 2020 con posterioridad a la fecha límite que estableció el legislador para culminar la obra y recibir los beneficios contributivos. Por último, el recurrente arguye que confió en la representación que le hizo el Estado sobre el tiempo que tenía para culminar la obra. Sus argumentos no nos persuaden, porque están basados en simples alegaciones que no están sustentadas con evidencia. Ninguno de los argumentos del recurrente, derrotan el texto claro de la Ley Núm. 257, *supra,* en la que el legislador desde

el año 2018 estableció el 31 de diciembre de 2019, como la fecha límite para presentar en el Departamento de Hacienda el Certificado de Cumplimiento.

Este tribunal revisó las conclusiones de derecho de las agencias en todos sus aspectos, conforme al mandato legislativo y a las directrices del Tribunal Supremo de Puerto Rico. No obstante, no encontró ambigüedad alguna en el texto de la ley aplicable. Por el contrario, el legislador dejó meridianamente claro que para que proceda vía excepción la concesión de los créditos contributivos el municipio tenía que haber sometido en el Departamento de Hacienda no más tarde del 30 de junio de 2013 la aprobación preliminar y, antes del 31 de diciembre de 2019 la certificación de que la obra fue terminada. La solicitud del recurrente incumplió con ambos requisitos. Por consiguiente, no tiene derecho a recibir los créditos contributivos que reclama.

**IV**

Por las razones antes señaladas, se confirma la resolución recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones